[No. A041332. First Dist., Div. Two. Oct. 26, 1988.]

SAMMONS ENTERPRISES, INC., Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
EDDIE D'TRINIDAD, Real Party in Interest.

## COUNSEL

Kerry R. Stoebner, Lee Ann Huntington and Morgenstein & Jubelirer for Petitioner.

No appearance for Respondent.

Suzanne Dingman and Barfield & Dingman for Real Party in Interest.

## OPINION

**BENSON, J.**— The issue raised by this petition for writ of mandate is whether Sammons Enterprises, Inc. (Sammons), a foreign corporation, is subject to personal jurisdiction within the State of California where its wholly owned subsidiary, Cathedral Hill Hotel, Inc., operates. The trial court denied Sammons's motion to quash service of summons. Sammons filed a petition for writ of mandate in this court; we issued an alternative writ requiring the trial court to vacate its order denying the motion and to enter a new order granting the motion to quash. The trial court has not

done so and the matter is now before us on the alternative order to show cause why a peremptory writ of mandate should not issue. We determine the contacts with this forum identified by plaintiff Eddie D'Trinidad are insufficient to allow personal jurisdiction of Sammons.

Sammons is a Delaware corporation with its principal offices in Dallas, Texas. Sammons is a holding company whose primary business is owning controlling interests in other corporations for investment purposes. Cathedral Hill Hotel, Inc. (Cathedral), is a Delaware corporation which is a wholly owned subsidiary of Sammons. Cathedral is a successor corporation to an entity which formerly operated under the name of the Jack Tar Company and Jack Tar of San Francisco, Inc. Cathedral is in the hotel and travel business and has its principal office in San Francisco, California.

Plaintiff was hired by the Jack Tar Company as a bus boy for the Jack Tar Hotel on October 3, 1964. Cathedral discharged plaintiff on October 15, 1985. At the time of his discharge, plaintiff was the banquet manager for Cathedral. Plaintiff brought this action against Cathedral, the predecessor Jack Tar entities, Sammons and two officers of Cathedral for wrongful termination, breach of the duty of good faith and fair dealing, intentional infliction of emotional distress and negligent infliction of emotional distress.

 Our review of the order denying a motion to quash service of summons is governed by the following principles: "(1) where a defendant properly moves to quash out of state service of process for lack of jurisdiction, the burden of proof is upon the plaintiff to establish the facts of jurisdiction by a preponderance of the evidence; (2) evidence of those facts or their absence may be in the form of declarations . . . ; (3) where there is a conflict in the declarations, resolution of the conflict by the trial court will not be disturbed on appeal if the determination of that court is supported by substantial evidence. Substantial evidence is not deemed synonymous with any evidence but rather of ponderable legal significance, . . . reasonable in nature, credible, and of solid value." (*Kroopf* v. *Giffey* (1986) 183 Cal.App.3d 1351, 1356 [228 Cal.Rptr. 807]; quotations and citations omitted.)

 Plaintiff bases his claim of personal jurisdiction solely on the ground that Sammons so controlled and dominated its subsidiary, Cathedral, as to effectively disregard the corporate entity of Cathedral. He argues the management activity of Sammons is sufficient to uphold the imposition of jurisdiction over Sammons in California. He appears to argue that California courts have both general and specific jurisdiction over Sammons. Accepting all factual allegations of plaintiff as true and drawing all inferences from those facts in favor of plaintiff as we must, we do not find

sufficient evidence in the record to support either general or specific jurisdiction of California courts over Sammons.

Plaintiff argues Mr. and Mrs. Sammons and Sammons Enterprises, Inc. "so directed and controlled the management of the Cathedral Hill Hotel as to blur the corporate entities." He relies on the following facts set forth in his declaration and his deposition testimony: (1) Mr. and Mrs. Sammons maintained suites at the hotel and visited the hotel at least two or three times a year; (2) during these visits the Sammons inquired about hotel management activities; (3) when they learned of a visit from Mr. and Mrs. Sammons, hotel management employees discussed "who would be 'the next to go'"; (4) frequently, someone was fired just after these visits; (5) the Sammons made all decisions regarding hotel decor from furniture to china, particularly after the 1983 fire.

Plaintiff also relies on deposition testimony of three Cathedral employees taken in an unrelated action arising out of damages suffered in the 1983 fire which severely damaged the hotel. After the general manager of the hotel left employment in October 1983, two employees of Cathedral were appointed acting managers of the hotel by the president of Sammons, Ken Mutzel. The acting managers made daily decisions but long-term decisions were discussed with Sammons. For example, the managers did not have authority to decide on tenants for the building but forwarded information to the president of Sammons in Dallas, Texas for his decision. In March 1984, Fred Honda was hired as general manager of Cathedral by the president of Sammons. Honda, however, was employed by Cathedral and paid by the hotel.

Plaintiff relies on the fact that he was a member of the Sammons Enterprises, Inc., Employee Stock Ownership Plan and was covered by the Employee Retirement Plan. Also, on one occasion, he received a letter from a Sammons employee thanking him for his efforts after the fire and enclosing a special bonus check of $200 drawn on a Sammons' bank account.

In support of the motion to quash, Sammons offered the following uncontested information: Cathedral is a self-sustaining financially responsible company which employed plaintiff; Sammons owns no real or personal property in California, has not qualified to do business in California, has never done business in California, has never sold any goods or services in California, has no employees, agents or distributors, in California, has never appointed an agent to receive service of process in California, does not maintain books or records in California, has no office or place of business in California, has not solicited business or advertised in California, has not transacted any intrastate business in California, has never conducted activities as a member of a partnership, joint venture or limited partnership in

California, has not had any interstate commerce with a California resident. Sammons admitted it had lines of credit with various banks in California. Sammons also points out that plaintiff has never been an employee of Sammons but was employed by Cathedral until he was terminated by Cathedral on October 15, 1985.

In response to plaintiff's opposition to the motion, Sammons presented additional facts. A declaration of Cathedral's general manager states that although Mrs. Sammons occasionally approved decorating decisions, she never participated in regular management decisions until she became president and director of Cathedral on February 3, 1986, after plaintiff was terminated. A declaration of the general counsel of Sammons states the Employee Stock Ownership Plan and the Employee Retirement Plan were set up by Sammons to enable its affiliates to adopt these plans for the benefit of their eligible employees; both plans are independently administered as required by law; Mrs. Sammons is the only one of 12 directors of Sammons who is an officer of Cathedral; from November 1983 to March 1984, there was no general manager of Cathedral or president of Cathedral; during this time, Sammons carefully reviewed operating decisions of the acting managers, one of whom was 29 years of age; Sammons and Cathedral are operated by separate management. Plaintiff's attorney stated in a declaration, a copy of which was filed by Sammons, that he had represented The Jack Tar Hotel in various matters and had discussed these matters with Sammons's general counsel who oversaw the legal matters of the hotel and Sammons. Sammons's general counsel admitted, in a responding declaration, that plaintiff's attorney had previously represented Sammons on several occasions on collection matters.

■ "The courts of this state may exercise personal jurisdiction on any basis consistent with the state and federal constitutions. (Code Civ. Proc., § 410.10.) Under the due process clause of the federal constitution, the basic prerequisite for personal jurisdiction is that the defendant have such 'minimum contacts' with the forum state that maintenance of suit would not offend ' "traditional notions of fair play and substantial justice." ' (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]; *Helicopteros Nacionales de Colombia* v. *Hall* (1984) 466 U.S. 408, 414 [80 L.Ed.2d 404, 411, 104 S.Ct. 1868, 1872].)

■ "If a defendant has sufficient extensive 'contacts' with the forum state, it may be subject to suit there on all claims wherever they arise. [general jurisdiction]. (*Helicopteros Nacionales, supra,* 466 U.S. at p. 414 [80 L.Ed.2d at p. 411].) In other cases, the jurisdictional sufficiency of the defendant's contacts depends on an assessment of the ' "relationship among the defendant, the forum, and the litigation." ' [specific jurisdiction]. (*Helicopteros Nacionales, supra,* 466 U.S. 408, 414 . . . .)" (*J. M. Sahlein Music*

*Co., Inc.* v. *Nippon Gakki Co., Ltd.* (1987) 197 Cal.App.3d 539, 542 [243 Cal.Rptr. 4].)

Plaintiff relies on *Empire Steel Corp.* v. *Superior Court* (1961) 56 Cal.2d 823, 832 [17 Cal.Rptr. 150, 366 P.2d 502]. In *Empire,* the court held a foreign parent corporation was subject to jurisdiction of California courts where the parent manipulated the affairs of its insolvent local subsidiary to the detriment of local creditors who were injured by the alleged fraudulent activities of the subsidiary and the parent. The court found the alter ego theory an appropriate basis for jurisdiction. This case is of no help to plaintiff as we have no allegation that Cathedral was in any financial difficulty or that Sammons's acts injured any creditors of Cathedral.

Plaintiff also relies on *Mathes* v. *National Utility Helicopters Ltd.* (1977) 68 Cal.App.3d 182, 190-191 [137 Cal.Rptr. 104]. In *Mathes,* the court had jurisdiction over the California parent. The issue was whether there was jurisdiction over the subsidiary located in Indonesia. The court held that where the court had jurisdiction over the parent, it also had jurisdiction over the foreign subsidiary where the parent so controlled and dominated the subsidiary as to in effect disregard the subsidiary's independent corporate existence. The facts showing control were: the parent prepared the subsidiary's annual sales plan and budget; both entities were engaged in aviation services; salary checks for the subsidiary's employees were drawn in the parent's corporate offices in California; and the parent frequently exercised the power to change the subsidiary's general manager. The court found of particular importance the fact that the parent's own advertising described the services of the subsidiary without mentioning that these services were performed by the subsidiary but stated instead: " 'At corporate headquarters, an experienced, professional business management team directs [the parent's] international activities to provide the highest standards in service, the best equipment and the highest caliber of personnel.' " In effect, the parent was treating the subsidiary as its agent in Indonesia. These factors of control are not present in the action before us and there is no evidence Sammons held out Cathedral as its agent.

Finally, plaintiff relies on *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 225 [1 Cal.Rptr. 1, 347 P.2d 1], for the proposition that only very slight contacts with the forum state are required to uphold jurisdiction where the cause of action arises within the forum state. The argument misstates what that court said. That court merely recited the rule that more contacts with the forum are required to sustain general jurisdiction over a foreign corporation than to sustain specific jurisdiction where it is the activity of the foreign corporation in the forum state which gives rise to the plaintiff's cause of action.

Sammons relies on *Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 274 [131 Cal.Rptr. 231, 551 P.2d 847]. The issue in *Westinghouse* was whether defendants were doing business in Alameda County for purposes of a change of venue motion. One of the defendants had a foreign subsidiary who did business in Alameda County. The court refused to find that the defendant was doing business in the county based on business done by its subsidiary. The court analogized to the rationale used in cases deciding whether a forum state had jurisdiction over a foreign parent corporation based on the activities of its wholly owned subsidiary within the forum state. The court said: "Jurisdiction over a foreign parent corporation will only be sustained where the foreign parent manipulates the subsidiary to the detriment of creditors or the subsidiary is the *alter ego* of the parent. . . . '. . . Bad faith in one form or another must be shown before the court may disregard the fiction of separate corporate existence.'" (*Ibid.*)

■ Sammons correctly asserts that ownership of the outstanding shares of stock of the subsidiary by the parent and overlapping officers and directors is not sufficient to establish personal jurisdiction over the foreign parent. "So long as the separation between parent and subsidiary corporations is real, even if merely formal, the use of the subsidiary to conduct business in California does not automatically subject the parent to suit in this state. Sole ownership of the subsidiary by the parent is not enough; in addition, there must be 'clear evidence that the parent in fact controls the activities of the subsidiary.'" (*Ryder Truck Rental* v. *Acton Foodservices Corp.* (C.D.Cal. 1983) 554 F.Supp. 277, 279; citations omitted.) ■ Where, as here, there is no showing the subsidiary is undercapitalized, that corporate formalities are not maintained, or that the subsidiary is held out as the agent of the parent, plaintiff has not met his burden to show personal jurisdiction based upon the alter ego theory. (*Ibid.*)

■ To establish general jurisdiction of California courts over Sammons, plaintiff must show " 'continuous and systematic' " contacts of Sammons with California. (*Helicopteros Nacionales de Colombia, S.A.* v. *Hall, supra,* 446 U.S. 408, 415 [80 L.Ed.2d 404, 411, 104 S.Ct. 1868].) ■ At most, plaintiff has shown some control of Cathedral by Sammons during the period of October 1983 to March 1984, after fire severely damaged the hotel and during which time no manager for Cathedral was employed. Plaintiff was not terminated until a year and a half after this period, in October 1985. We do not find this sufficient to establish that Sammons was doing business in California such as to subject it to general jurisdiction in the courts of this state. ■ A foreign parent corporation is not subject to personal jurisdiction based solely on the independent activities of its wholly owned subsidiary even where the parent exercises general executive responsibility for the operations of the subsidiary and reviews its major policy decisions.

(*Kramer Motors, Inc.* v. *British Leyland, Ltd.* (9th Cir. 1980) 628 F.2d 1175, 1177, cert. den. 449 U.S. 1062 [66 L.Ed.2d 604, 101 S.Ct. 785].)

■ To establish specific jurisdiction, plaintiff must show a substantial link among Sammons, the forum state and the injuries suffered by plaintiff. Plaintiff points to the fact that Mrs. Sammons asked questions about management personnel during her visits and, after these visits, Cathedral executives were frequently terminated. Plaintiff has made no showing, however, that anyone from Sammons was responsible for or even reviewed or approved the decision to terminate him.

His wrongful termination claim did not arise out of his stock option or retirement plan. The single instance of receipt of the letter from Sammons enclosing a bonus check and thanking him for his work certainly bears no relationship to his termination. ■ The due process clause requires that "individuals have 'fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign,' . . . [¶] Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this 'fair warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." (*Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462, 472 [85 L.Ed.2d 528, 540-541, 105 S.Ct. 2174]; citations omitted.)

■ We find no substantial evidence in the record to support any basis for general or specific jurisdiction over Sammons by a court of this state.

Let a peremptory writ of mandate issue ordering the trial court to vacate its decision denying Sammons motion to quash service of summons and directing that court to issue its order granting the motion.

Kline, P. J., and Pollak, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.