PATHE COMPUTER CONTROL SYSTEMS CORP., Plaintiff, Appellee,

v.

KINMONT INDUSTRIES, INC., et al., Defendants, Appellees,

Robert E. Margulies, Appellant.

No. 91–1534.

United States Court of Appeals, First Circuit.

Heard Oct. 7, 1991.

Decided Jan. 28, 1992.

Robert E. Margulies with whom Frank E. Catalina and Margulies, Wind, Herrington & Katz, Jersey City, N.J., were on brief, for appellant.

Mark C. Michalowski with whom James Pollock, Kay L. Lackey, and Sherburne, Powers & Needham, Boston, Mass., were on brief, for appellee Abbey Holding, Inc.

Before BREYER, Chief Judge, BROWN,* Senior Circuit Judge, and TORRUELLA, Circuit Judge.

BREYER, Chief Judge.

The district court assessed a $7500 sanction against Robert Margulies, the plaintiff's counsel in this case, because, in the court's view, 1) a motion to transfer the case from Massachusetts to North Carolina "was brought for the purpose of delay," and 2) counsel's pursuit of his client's "fraud" claim was not in "good faith." Fed.R.Civ.P. 11. Counsel appeals the sanctions. After reviewing the record, we conclude that the first ground—the transfer motion—provides a legally adequate basis for a sanction, but the second ground does not.

* Of the Fifth Circuit, sitting by designation.

## I

### *Background*

The essential background facts of this litigation are the following: Beginning sometime in 1987 and continuing through the first half of 1988, the plaintiff, Pathe Computer Control Systems (Pathe), negotiated with Judd York to buy several North Carolina companies that York owned (which companies we shall collectively call "Kinmont"). On July 20, 1988, York sold the companies instead to the defendant Abbey Holding, Inc. (Abbey). Pathe believed that York had behaved unfairly, and it brought a lawsuit against York, Abbey, and Kinmont in federal court in New Jersey. Pathe claimed, among other things, that York, by keeping the York/Abbey negotiations secret, had "defrauded" Pathe. Pathe said that Abbey had conspired with York to commit this fraud. Pathe added that Abbey had unlawfully interfered with Pathe's contractual relations. The New Jersey federal court transferred the Pathe/Abbey case to Massachusetts, where, after discovery, the Massachusetts lower court granted Abbey's motion for summary judgment. Subsequently, the Massachusetts court assessed the $7500 sanction that is the subject of this appeal. We shall consider each of the sanction's supporting grounds—the "transfer motion" and the "fraud claim"—in turn.

## II

### *The Transfer Motion*

On March 26, 1990, more than three weeks after Abbey filed the dispositive summary judgment motion, Pathe filed a motion to transfer its case against Abbey from the District of Massachusetts to the Western District of North Carolina. The relevant statute, 28 U.S.C. § 1404(a), says,

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The district court denied the motion, holding that North Carolina was not a "district" where Pathe's case "might have been brought." It later based its sanction, in part, on the ground that Pathe had "interposed" this motion "for an[ ] improper purpose," namely, "to cause unnecessary delay." Fed.R.Civ.P. 11. The district court, more directly aware of litigatory detail than we, has considerable legal leeway in making this latter determination. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (adopting abuse of discretion standard). Two features of this case convince us that it did not act beyond its legal powers.

First, the timing of the motion is consistent with a last minute Pathe effort to delay a likely adverse decision on the merits of the case. Pathe did not file its motion until after the completion of discovery, more than three weeks after Abbey filed its dispositive motion for summary judgment. Pathe claims that its transfer motion was kindled by the fact that the New Jersey court (which had kept Pathe's case against York) transferred that sister case (against York) to North Carolina. But that New Jersey event took place more than four months before Pathe brought its Massachusetts motion. Moreover, by the time Pathe filed its Massachusetts transfer motion, and with the completion of discovery, the weakness of its substantive claims had become apparent.

Second, Pathe did not present to the district court at the time of its transfer motion any plausible reason to believe that Abbey had sufficient contacts with North Carolina to justify a finding that this was a district where Pathe's "civil action" against Abbey "might have been brought," as the statute requires. In light of the previous (New Jersey/Massachusetts) transfers, and the related jurisdictionally-based court decisions, the district court could reasonably have thought counsel fully understood § 1404(a)'s legal requirements.

Mr. Margulies, to some degree at the sanctions hearing and more explicitly on appeal, tries to make up for this legal deficiency by arguing that Abbey's eventually successful (out-of-state) effort to acquire the stock of Kinmont, an in-state (*i.e.,* North Carolina) company, itself created a basis for North Carolina jurisdiction to hear Pathe's fraud and contract-interference claims against Abbey. His arguments, in our view, however, amount to too little, too late.

His efforts to find North Carolina jurisdiction to sue Abbey in respect to Pathe's fraud claim against Abbey are beside the point. Mr. Margulies concedes that he had abandoned the fraud claim at approximately the same time he filed the transfer motion.

His present legal effort to find North Carolina jurisdiction for the contract-interference claim, in our view, is similarly inadequate. The record indicates that the relevant acquisition negotiations took place outside North Carolina. We can find no controlling authority, and plaintiff has offered none, for extending jurisdiction over an out-of-state corporation, where the plaintiff also resides out-of-state, the negotiations occurred out-of-state, and the dispute involved *negotiations-related* claims. And, to assert jurisdiction over an out-of-state parent (here Abbey) based on the forum contacts of its subsidiary requires rather special circumstances, which, as far as we can tell, are not here present. *See Donatelli v. National Hockey League*, 893 F.2d 459, 466 (1st Cir.1990) (subsidiary's contacts with forum state apply derivatively to parent company where "plus factors" exist, where "subsidiary enters the forum state as an agent for the parent, ... where the parent is exercising unusual hegemony over the subsidiary's operations and has dictated the entry, or where the subsidiary is a separate entity in name alone"); *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 905 (1st Cir.1980). *Cf. Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 774 n. 18 (5th Cir.1988) (where parent holding company merely operates subsidiary as an investment, subsidiary's contacts with forum state will not be imputed to parent); *Levy v. Plastocks, Inc.,* 744 F.Supp. 570, 572 (S.D.N.Y.1990); *Poe v. Babcock Int'l, PLC,* 662 F.Supp. 4, 6–7 (M.D.Pa.1985). Margulies says that after

Abbey bought Kinmont, it loaned Kinmont some money, but he failed to present timely affidavits to that fact, and, regardless, we doubt the loan makes any difference. *See, e.g., Garshman v. Universal Resources Holding, Inc.,* 641 F.Supp. 1359, 1365 n. * (D.N.J.1986) (loans from parent to subsidiary insufficient to confer jurisdiction), *aff'd on other grounds,* 824 F.2d 223 (3d Cir.1987).

These legal jurisdictional arguments are too late because the place and the time to make them was in the district court and in support of the transfer motion. Mr. Margulies' failure to do so tends to support that court's belief that, at the time, he was not aware of any plausible legal ground in support of the transfer, and, in fact, interposed his motion for "purposes of delay."

We assume that Mr. Margulies' avant garde jurisdictional theories are plausible enough to have defeated a sanctions claim resting upon failure to make "reasonable inquiry" that the motion was "warranted" by existing law (or a "good faith" argument for modification)—even if he had raised those theories for the first time late in the day. *Kale v. Combined Ins. Co.,* 861 F.2d 746, 759 (1st Cir.1988). But, we do not believe that the assertion of such a theory, for the first time, in sketchy form, at the district court's sanctions hearing, can automatically demonstrate lack of an "improper" delaying "purpose" for filing the original motion. *See Lancellotti v. Fay,* 909 F.2d 15, 18–19 (1st Cir.1990) ("the amended Rule ... reach[es] groundless but 'sincere' pleadings, as well as those which, while not devoid of all merit, were filed for some malign purpose."); *Cohen v. Virginia Elec. & Power Co.,* 788 F.2d 247, 249 (4th Cir.1986) (where client and attorney "filed a motion that they had no intention of pursuing if it were opposed ... the district court did not abuse its discretion in finding that the motion for leave to amend was filed for an improper purpose" even if a legal basis for motion existed); *Quadrozzi v. City of New York,* 127 F.R.D. 63, 78 n. 27 (S.D.N.Y.1989); 2A Moore's Federal Practice ¶ 11.02[3], at 11–25 (2d ed. 1991). *Cf. Sheets v. Yamaha Motors Corp.,* 891 F.2d 533, 538 (5th Cir.1990); *Aetna Life Ins. Co. v. Alla Medical Servs., Inc.,* 855 F.2d 1470, 1476 (9th Cir.1988). If anything, the lateness of its assertion tends to show the opposite.

In sum, whether or not we would have imposed an "improper purpose" sanction upon the transfer motion, we cannot say the district court's doing so exceeded its legal powers. *Cooter & Gell,* 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

## III

### *The Fraud Claim*

■ The district court also based its $7500 sanction upon Pathe's having pursued a meritless fraud claim against Abbey. At the sanction hearing, the court said that Mr. Margulies admitted the claim "was a no good claim," and that he was responsible

> for having brought it and not having given up on it at a time when counsel could have saved the time and effort and money that was invested in fighting it.

Mr. Margulies argues that he neither made, nor continued to assert, Pathe's fraud claim without a

> belief formed after reasonable inquiry [that the claim was] ... well grounded in fact and [was] warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law....

Fed.R.Civ.P. 11. He adds that the record will not support the district court's contrary conclusion.

After reviewing the record, taking account of the district court's discretionary powers, we conclude that Mr. Margulies is correct. The specific claim at issue, in the words of Pathe's complaint, alleges that "Abbey ... conspired with defendant York ... to deceitfully and fraudulently induce" Pathe to continue its various negotiations over Kinmont, particularly negotiations that would lead Pathe to negotiate with Kinmont's creditors, in an effort to keep Kinmont alive. Pathe alleges that York gave Pathe "assurances" that it was not

"seeking any other purchasers of" Kinmont's "stock;" that York "failed and refused to disclose the role of Abbey;" and that Abbey "specifically advised" York "not to advise" Pathe "of the true state of affairs." Our legal research suggests this claim was "warranted" by a "good faith" view of the law, and that Mr. Margulies had sufficient factual basis to pursue the claim.

Massachusetts law may allow a victim of a fraud to sue, not only the person who lies, but also those who knowingly help him do so. Under the Restatement of Torts, a person may be liable in tort if he "knows that the ... conduct [of another person] constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." Restatement (Second) of Torts § 876(b) (1979). In *Stock v. Fife*, 13 Mass.App.Ct. 75, 430 N.E.2d 845, 849 n. 10 (1982), the Massachusetts Appeals Court noted that in

> the tort field, the doctrine appears to be reserved for application to facts which manifest a common plan to commit a tortious act where the participants know of the plan and its purpose and take affirmative steps to encourage the achievement of the result.

And in *Kyte v. Philip Morris Inc.*, 408 Mass. 162, 556 N.E.2d 1025, 1027 (1990), the Supreme Judicial Court suggested that Massachusetts conspiracy law may encompass this section of the Restatement. *See also Nelson v. Nason*, 343 Mass. 220, 177 N.E.2d 887 (1961) (allowing recovery under § 876(b) where defendant participated in high speed automobile race on public way); *Payton v. Abbott Labs*, 512 F.Supp. 1031 (D.Mass.1981) (applying § 876 under Massachusetts law in products liability action). This section, at least arguably, applies to a conspiracy to defraud. *Norman v. Brown, Todd & Heyburn*, 693 F.Supp. 1259, 1264 (D.Mass.1988) (recognizing possible cause of action under Massachusetts law for aiding and abetting fraud); *Margaret Hall Foundation, Inc. v. Atlantic Fin. Management, Inc.*, 572 F.Supp. 1475, 1482 (D.Mass.1983) (same).

We also believe that Mr. Margulies, at least when he filed his complaint, had a sufficient factual basis to assert that Abbey agreed with York to mislead Pathe. The evidence consisted of a statement to Mr. Margulies by Mr. Margulies' client, William Codos, the president of Pathe. Mr. Codos told Mr. Margulies that Judd York himself had telephoned Codos just after successfully selling Kinmont to Abbey. During that call Codos said that York admitted he had been negotiating with Abbey for some time. York (according to Codos) added:

> I am not supposed to call you and tell you about this because I have been pledged to secrecy by the people that are with me, but I feel that I owe you, I owe you the fact—I owe you the right and I am therefore telling you that the whole deal is off.

Codos concluded that

> Abbey was well aware of Pathe's involvement and had deliberately acted to conceal [Abbey's role].... [B]oth York and Abbey had been using and manipulating Pathe to obtain guarantees and other arrangements with creditors of the Kinmont companies, including the IRS, so as to maintain those companies as a viable business to the benefit of both Abbey and York and to the detriment of Pathe

Catalina Aff. (Opposing Rule 11 Sanctions) at 4. Margulies was also aware that Kinmont had been in financial trouble and that Pathe, during its endeavor to acquire Kinmont, had been negotiating with Kinmont's creditors.

This evidence might not seem strong. But, it seems to us sufficient to avoid fact-based sanctions. It offered some factual ground for believing that York and Abbey agreed to mislead Pathe, perhaps with the hope that Pathe would continue to talk to Kinmont's creditors, offering them money or benefits, and thereby helping to keep Kinmont alive. Thus, the filing of the complaint, with this claim, cannot support a sanction.

Of course, we recognize that the court rested its sanction, not on the filing of the complaint, but upon Pathe's continued pur-

suit of its fraud claim after discovery revealed that the claim lacked factual merit. The problem here, however, is that the record shows that Pathe did not learn significantly more about the fraud claim until Abbey responded to Pathe's interrogatories. Abbey responded on March 1, 1990. Abbey moved for summary judgment one day later. And, Pathe, in its response to that motion (and in its brief) filed on March 29, abandoned the fraud claim. The abandonment, therefore, seems reasonably prompt. And, nothing happened during March that would belie that appearance. We also recognize that Pathe's March 29 papers and brief lack clarity; the court might have failed to recognize the "abandonment." But, the court made nothing of this particular matter, relying, rather, upon the "time and effort and money that was invested in fighting" the claim. Abbey spent virtually no time or effort after March.

In sum, we do not see how Pathe's initial assertion of the fraud claim, nor its failure to withdraw that claim before it received interrogatory answers on March 1, could warrant sanctions.

We conclude that the sanction is proper insofar as it rests upon the filing of the transfer motion but not proper insofar as it rests upon the fraud claim. At oral argument in this court counsel agreed that, if we reached this conclusion, we should simply reduce the amount of the sanction rather than remanding the case for further proceedings. We therefore reduce the sanction to $3000. Abbey's motion for additional sanctions pursuant to Fed.R.App.P. 38 is also denied.

*The judgment of the district court is vacated and the case is remanded for the entry of a new judgment in respect to sanctions.*