285 N.J. Super. 245 (1995)
666 A.2d 1013
ROBERT G. PFUNDSTEIN, PLAINTIFF-RESPONDENT,
v.
OMNICOM GROUP INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 20, 1995.
Decided November 13, 1995.
*247 Before Judges LONG, MUIR, Jr.[1] and BROCHIN.
Neal H. Klausner argued the cause for appellant (Davis & Gilbert, attorneys; Mr. Klausner and Howard J. Rubin, of counsel and on the brief).
Michael Patrick Carroll argued the cause for respondent (Roy E. Kurnos, attorney, and on the brief; Mr. Carroll, of counsel and on the brief).
The opinion of the court was delivered by LONG, P.J.A.D.
*248 By our leave, defendant, Omnicom Group, Inc., appeals from the trial judge's order denying its motion to dismiss the complaint filed by plaintiff, Robert G. Pfundstein, for lack of jurisdiction. Because we have concluded that Omnicom's contacts in this forum are insufficient to justify the exercise of personal jurisdiction over it, we reverse.
In 1986, Pfundstein, a resident of New Jersey, entered into an Employment Agreement with Doyle Dane Bernbach Group, Inc., a New York corporation which was then in the process of merging with two other corporations to form Omnicom. Pfundstein was to serve as Omnicom's chief financial officer through 1991. Both Pfundstein and Doyle executed the Employment Agreement in New York. The Agreement included a New York choice-of-law provision. According to Omnicom, the Agreement was negotiated in New York; Pfundstein does not dispute this contention.
In 1987, the parties decided to part company and in furtherance of that decision entered into a Severance Agreement which also included a New York choice-of-law provision. This Agreement was apparently negotiated in New York as well. Subsequently, Omnicom hand-delivered two copies of the Severance Agreement to Pfundstein at Pfundstein's New York office, for him to sign and return. The record contains no indication that Pfundstein signed these copies. However, five days later, Omnicom mailed two copies of a revised Severance Agreement to Pfundstein at his New Jersey home, where he signed them. These copies had already been signed by Omnicom but, pursuant to the Agreement, were not to become binding until Pfundstein returned one copy to New York.
Among other provisions, the Severance Agreement stated that Pfundstein would be paid fringe benefits equal to those paid to former executives who occupied positions similar to the one he had previously occupied. In 1989, Pfundstein learned that other former executives were receiving salary continuation benefits while he was not. In response to his inquiries, a third agreement was *249 reached. This Salary Continuation Agreement was negotiated by phone and through the mail, between Omnicom in New York, and Pfundstein in New Jersey.
Thereafter Pfundstein discovered that other executives were receiving more salary continuation benefits than he had been accorded. Pfundstein filed suit against Omnicom for breach of the Severance Agreement alleging, among other things, that Omnicom misrepresented to him that there was parity between his Salary Continuation Agreement and those offered to similarly situated executives. Pfundstein served Omnicom pursuant to the long-arm statute, R. 4:4-4(c), and Omnicom moved to dismiss for lack of jurisdiction.
The record contains no indication that Omnicom has any direct contacts with New Jersey other than those detailed above. However, Omnicom is a holding company with various subsidiaries in the advertising business which place advertisements in the New Jersey media.
Omnicom's Secretary and General Counsel certified:
Omnicom sets financial targets for its subsidiaries.... But Omnicom's subsidiaries decide on their own how to meet those financial targets.
In addition, all of Omnicom's subsidiaries (a) keep their own books and bank accounts; (b) file their own income tax returns; (c) are managed by their own board of directors; (d) make their own personnel, marketing and management decisions; (e) direct their own day-to-day operations; and (f) otherwise operate as independent companies.
Pfundstein countered:
Omnicom controls the operations of the subsidiaries in a very real sense. Usually, the subsidiaries are 100% owned by Omnicom. While the local management is given fairly wide discretion in determining how to meet profitability goals set by Omnicom, Omnicom keeps close watch on the subsidiaries and stands ready to replace management of any subsidiary if it does not meet the goals set by Omnicom.
In denying Omnicom's motion, the trial judge held:
THE COURT: Okay. Looking at the similar circumstances of this situation this case, New York law applies. No question about that.
However, I'm satisfied with, while it's minimal, those minimal contacts between the defendant and the plaintiff as well as the fact that the defendant does have subsidiaries doing business in the State of New Jersey, extensive business in the *250 State of New Jersey that there's a sufficient contact with the State so as to defeat the defendant's application to dismiss for lack of personal jurisdiction. So I'll deny the application.
Omnicom's attorney asked for clarification:
MR. KLAUSNER: Your Honor, for the record, you've asserted general jurisdiction? Is that it?
THE COURT: Yes, let me just  okay, if you'll see my law clerk she'll give you copies of the order. Thank you, counsel.
Omnicom moved for leave to appeal which we granted.
New Jersey's long-arm statute permits service on nonresidents to the limits of due process. Avdel Corp. v. Mecure, 58 N.J. 264, 268, 277 A.2d 207 (1971). For a state to exercise personal jurisdiction over a nonresident defendant consistent with due process, the nonresident must have "certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 342-43, 85 L.Ed. 278, 283 (1940)).
These "minimum contacts" are measured differently depending on whether the case "arises out of or relates to" them. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984). If a suit "arises out of or relates to" the contacts, the state acquires personal jurisdiction if the nonresident "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40, 2 L.Ed.2d 1283, 1298 (1958). This is called "specific jurisdiction." Helicopteros, supra, 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8, 80 L.Ed.2d at 411 n. 8. If the suit does not "arise[] out of or relate[] to" the contacts, the state acquires personal jurisdiction if the contacts were "continuous and systematic." Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 445, 72 S.Ct. 413, 418, 96 L.Ed. 485, 492 (1951). This is called "general jurisdiction." Helicopteros, *251 supra, 466 U.S. at 415 n. 9, 104 S.Ct. at 1872 n. 9, 80 L.Ed.2d at 411 n. 9.
It is not altogether clear from this record on what basis the trial judge allowed Pfundstein to invoke this state's jurisdiction. Pfundstein argues that facts supporting the exercise of specific and general jurisdiction were shown. We disagree.
We turn first to specific jurisdiction. Pfundstein technically sued only on the Severance Agreement in order to invoke its benefits. However, even if the Salary Continuation Agreement, upon which he relies as establishing contacts for jurisdiction, is viewed as "related" to his suit within the meaning of Helicopteros, supra, specific jurisdiction is absent. The Salary Continuation Agreement is connected to New Jersey only by the interstate phone and mail communications which led up to it. Those communications are insufficient to warrant the exercise of specific jurisdiction. The reason for this is that in order to exercise jurisdiction, in addition to a finding that the suit is "related" to Omnicom's contacts with New Jersey through the Salary Continuation Agreement, there must be a showing that Omnicom "purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." The "purposeful availment" test ensures that states will only acquire specific jurisdiction over nonresident defendants when they "should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980). No such showing is possible based on the mail and telephone communications in this case.
In Lebel v. Everglades Marina, Inc., 115 N.J. 317, 558 A.2d 1252 (1989), the Supreme Court explored this issue. There, the plaintiff was a New Jersey resident who bought a racing boat from a Florida defendant. Having met the plaintiff at a boat show in New York, the defendant, from his home in Florida, telephoned the plaintiff in New Jersey some twenty times over the following two years to solicit and to negotiate the sale. Additionally, the *252 defendant mailed the contract to New Jersey for the plaintiff's signature. The only other New Jersey contact was that the defendant knew that the boat was destined for New Jersey even though its tender was in Florida. Although the Supreme Court approved a finding of specific jurisdiction over the defendant, it noted that "this result pushes at the `outermost limit' of personal jurisdiction." Id. at 329, 558 A.2d 1252. In ruling, the Court made it clear that the phone calls were relevant because the defendant had tried to "tap an interstate market." Id. at 325, 558 A.2d 1252.
The negotiation of the Salary Continuation Agreement in this case lacks that linchpin. It plainly was not an attempt by Omnicom to tap an interstate market or to avail itself of the privilege of doing business here. Rather, it was a "fortuitous" or "attenuated" contact between Omnicom and New Jersey by which Omnicom accommodated Pfundstein. Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790, 797 (1984). The purposeful availment test was simply not met by Omnicom's actions. Thus, the underpinnings for the exercise of specific jurisdiction are lacking in this case.
We turn next to Pfundstein's claim of general jurisdiction which is posited solely on the New Jersey contacts of subsidiary corporations wholly-owned by Omnicom. More specifically, Pfundstein alleges that subsidiaries of Omnicom place media advertisements for their clients' products in New Jersey.
It is well-established that the forum contacts of a subsidiary corporation will not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than mere ownership. Unicon Investments v. Fisco, Inc., 137 N.J. Super. 395, 349 A.2d 117 (Law Div. 1975); Mylan Laboratories, Inc. v. Akzo, N.V., 2 F.3d 56 (4th Cir.1993); Pathe Computer Control Systems Corp. v. Kinmont Industries, Inc., 955 F.2d 94 (1st Cir.1992); Southmark Corp. v. Life Investors, Inc., 851 F.2d 763 (5th Cir.1988); Lucas v. Gulf & Western Industries, Inc., 666 F.2d 800 (3rd Cir.1981); Stratagem Development Corp. v. Heron Intern. *253 N.V., 153 F.R.D. 535 (S.D.N.Y. 1994); Sammons Enterprises, Inc. v. Superior Court, 205 Cal. App.3d 1427, 253 Cal. Rptr. 261 (1 Dist. 1988). Each court which has considered this issue has engaged in its own articulation of the notion of what, in addition to mere ownership, is required for the contacts of a subsidiary to be imputed to a parent. Yet the articulations echo each other. For example, Mylan, supra, required that in order to subject the parent to jurisdiction based on the subsidiary's contacts, the parent must exert "considerable control" over the activities of the subsidiary. Mylan, supra, 2 F.3d at 61. Likewise, in Pathe, supra, Judge (now Justice) Breyer stated:
[T]o assert jurisdiction over an out-of-state parent... based on the forum contacts of its subsidiary requires rather special circumstances.... See Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir.1990) (subsidiary's contacts with forum state apply derivatively to parent company ... "where the parent is exercising unusual hegemony over the subsidiary's operations ...") (emphasis added).
[Pathe, supra, 955 F.2d at 96.]
In Sammons, supra, the court held that a parent holding company "is not subject to personal jurisdiction based solely on the independent activities of its wholly-owned subsidiary even where the parent exercises general executive responsibility for the operations of the subsidiary and reviews its major policy decisions." Sammons, supra, 253 Cal. Rptr. at 264-65.
Likewise in Lucas, supra, applying New Jersey law, the Court of Appeals for the Third Circuit held that the New Jersey contacts of a subsidiary corporation will not be imputed to its parent corporation for jurisdictional purposes unless the subsidiary is "merely the alter ego or agent" of the parent and unless the "independence of the separate corporate entities was disregarded." Lucas, supra, 666 F.2d at 806.
Pfundstein's reliance on Stratagem, supra, is misplaced. The factors taken into consideration by the court there are similar to those in Southmark, supra, and support Omnicom's position, not that of Pfundstein. Included are common ownership, financial dependency, interference with a subsidiary's selection of personnel, *254 disregard of corporate formalities, and control over a subsidiary's marketing and operational policies. Stratagem, supra, 153 F.R.D. at 546. In short, all of the cases resound a single theme: "Judicial jurisdiction over a subsidiary corporation will give the state judicial jurisdiction over the parent corporation if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence." Restatement (Second) of Conflicts of Laws, § 52 comment b (1969). Unicon, supra, 137 N.J. Super. at 402, 349 A.2d 117. See also Moon Carrier v. Reliance Ins. Co., 153 N.J. Super. 312, 323, 379 A.2d 517 (Law Div. 1977).
Here, it is undisputed that all of Omnicom's subsidiaries (a) keep their own books and bank accounts; (b) file their own income tax returns; (c) are managed by their own boards of directors; (d) make their own personnel, marketing and management decisions; (e) direct their own day-to-day operations; and (f) otherwise operate as independent companies. While Pfundstein posits the legal conclusion that Omnicom "controls the operations of the subsidiaries," even he acknowledges that the subsidiaries are given "fairly wide discretion" in meeting the profitability targets Omnicom sets. Omnicom simply does not exercise unusual hegemony over its subsidiaries, or dominate and control them so as to, in effect, disregard their independent corporate existence. As such, the contacts of the subsidiaries cannot be imputed to Omnicom and no general jurisdiction theory is viable.
Reversed and remanded for the entry of an order dismissing the complaint.
NOTES
[1] Judge Muir did not participate in oral argument, but has, with the consent of counsel, been added to the panel deciding the matter.