**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3718-19

EDWARD KING,

     Plaintiff-Appellant,

v.

MARSH VENTURES, LLC
(d/b/a "G. MARSH VENTURES"),
GARRY J. MARSH, and GARRY
S. MARSH,

     Defendants-Respondents.

_____

Argued September 1, 2021 – Decided  September 15, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0711-19.

Christopher P. Lenzo argued the cause for appellant (Lenzo & Reis, LLC, attorneys; Christopher P. Lenzo, of counsel and on the briefs).

John J. Zidziunas argued the cause for respondents (John J. Zidziunas & Associates, LLC, attorneys; John J. Zidziunas, of counsel and on the brief; Jeff V. Fucci, on the brief).

PER CURIAM

Plaintiff Edward King filed this action against defendants Marsh Ventures, LLC, Garry J. Marsh (Marsh Senior), and Garry S. Marsh (Marsh Junior), claiming they engaged in consumer fraud, tortious interference with prospective economic advantage, and invasion of privacy. He appeals from an April 24, 2020 order denying his motion for reconsideration, dismissing his complaint with prejudice for lack of personal jurisdiction in New Jersey, and denying his application for attorney's fees. We affirm as modified herein.

We derive the following facts from plaintiff's complaint. Marsh Ventures is an executive placement firm and Florida limited liability company with offices in Boca Raton, Florida. Marsh Senior, the president and co-owner of March Ventures, resides in Florida. His son, Marsh Junior, is a recruiter, and co-owner of Marsh Ventures. He too resides in Florida.

Plaintiff was employed as a regional sales director by Zumtobel Lighting, Inc. (Zumtobel) from approximately August 2018 to March 25, 2019, when he was terminated. He worked from his home in Skillman, New Jersey.

On March 21, 2019, plaintiff sent Marsh Senior a message through LinkedIn, stating he was "potentially looking to make a move in the near future and wanted to see what jobs are currently out there." On the morning of March

25, Zumtobel Chief Executive Officer Rolland Mok called plaintiff and informed him that he was aware plaintiff was working with defendants to find another job. Mok told plaintiff he had seen the LinkedIn message that plaintiff sent Marsh Senior. Later that same day, Zumtobel terminated plaintiff.

Plaintiff claims he "sent his LinkedIn message to . . . Marsh Senior in confidence" and "reasonably expected that defendants would not disclose that private communication to his current employer." During a subsequent telephone call with plaintiff, "Marsh Senior blamed the communication to Zumtobel on his son, . . . Marsh Junior." In a March 27, 2019 e-mail, plaintiff told Marsh Senior "that he had lost his job at Zumtobel 'based off sending [the LinkedIn] to you.'" Marsh Senior did not reply to that e-mail to dispute that defendants caused Zumtobel to terminate his employment.

Marsh Ventures' website is addressed to job seekers and states it "fill[s] positions globally – focused on the Americas and Europe with broader Middle East and Asia capabilities."

Plaintiff filed a three-count complaint against defendants alleging violation of the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20 (count one); tortious interference with prospective economic advantage (count two); and invasion of privacy by public disclosure of private facts (count three).

In lieu of filing an answer, defendants moved to dismiss the complaint for failure to state a claim pursuant to Rule 4:6-2(e) or, in the alternative, for lack of personal jurisdiction pursuant to Rule 4:6-2(b).  The motion was supported by affidavits of Marsh Senior and William Simoni.

Marsh Senior averred that plaintiff "never hired me or my firm to provide services to him."  He never met plaintiff in person and did not have any form of contact with plaintiff prior to plaintiff's LinkedIn message.  Marsh Junior never had contact with plaintiff "via phone, e-mail, message, or otherwise" and was not an employee of Marsh Ventures at any time relevant to this matter.

Simoni averred that he was employed by Zumtobel as its Vice President and General Manager of Sales for the Americas.  "Zumtobel has a business relationship with [d]efendants, . . . whom Zumtobel uses, from time to time, to locate suitable, potential employees for Zumtobel."  Plaintiff was an at-will employee who reported to and was supervised by Simoni.  "In early 2019, [Simoni] became unhappy with [plaintiff's] performance."  During a February meeting, Simoni and Kenneth Breitman, Zumtobel's Human Resources Director, discussed plaintiff's performance and "agreed [plaintiff] should be terminated for performance reasons."

4

Plaintiff filed four opposing certifications. In his initial certification, he reiterated the allegations of his complaint. In his sur-reply certification, plaintiff provided a copy of a text message exchange with Steven Cooper, his former Zumtobel supervisor. On the morning of March 25, 2019, plaintiff informed Cooper that Marsh Senior had disclosed to Mok and Breitman that plaintiff was looking for another job. Later in the text message exchange, plaintiff advised Cooper that he "had just been fired."

Cooper certified that he worked with plaintiff at Zumtobel for about six years, during which plaintiff's "work performance was exemplary . . . ." Cooper successfully recommended plaintiff for a promotion to Regional Sales Director, effective in January 2019. Cooper stated that he "never heard Bill Simoni say anything negative about [plaintiff's] performance."

In addition, James Coles certified that he hired plaintiff and worked with him for about six years at Zumtobel. Plaintiff reported indirectly to Coles, who stated that plaintiff "had an excellent job performance record." Coles confirmed that Cooper recommended plaintiff for the promotion to Regional Sales Director in December 2018.

The motion judge issued a January 6, 2020 order and lengthy oral decision that: (1) denied defendants' motion to dismiss the complaint for failure to state

5

a claim under Rule 4:6-2(e); (2) denied defendants' request for an award of sanctions; (3) determined that the court lacked specific personal jurisdiction over defendants; and (4) allowed limited written discovery to determine whether the court had general jurisdiction over defendants.

Because the judge denied the motion to dismiss the complaint for failure to state a claim, we focus upon his findings relating to personal jurisdiction. The judge found that plaintiff contacted Marsh Ventures through a March 21, 2019 message on LinkedIn, in which he stated that "he was potentially looking to make a move in the near future and wanted to see what jobs were currently out there." Four days later he was terminated by Zumtobel. Two days after his termination, Marsh Senior contacted plaintiff requesting more information from him regarding his job search. "Plaintiff allege[d] that the defendants passed along his message to Zumtobel about potentially seeking other employment[,] . . . which led to his termination. Defendants contend that prior to the LinkedIn message being sent, Zumtobel had plans to terminate the plaintiff for performance reasons."

The judge determined that Zumtobel, which is headquartered in Highland, New York, is a wholly owned subsidiary of The Zumtobel Group, an Austrian company. Plaintiff worked from his home in New Jersey. Marsh Ventures, on

the other hand, is essentially a two-man shop, located in Florida. Both Marsh Senior and Marsh Junior, who own the company, reside in Florida.

The judge concluded that the motion should be considered a motion for summary judgment as the moving papers went well beyond the four corners of the complaint. See R. 4:6-2 (stating that if "matters outside the pleading are presented and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by R. 4:46"). The judge noted that no substantive discovery had been exchanged and found that there were material facts at issue precluding summary judgment for failure to state a claim.

The judge then examined whether defendants had sufficient contacts with the forum state to create personal jurisdiction. He explained that the defendants must have sufficient minimum contacts with the forum state that exercising jurisdiction "does not offend the traditional notions of fair play and substantial justice." Defendants "must have contact with this state that is so continuous and substantial as to justify subjecting the defendant to jurisdiction." General personal jurisdiction "require[s] extensive contact between the defendant and the forum [state]."

Relying heavily on Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466 (App. Div. 2013), the judge found "defendant[s'] contacts with New

Jersey were attenuated at best. They [were] not continuous and systematic so as to establish general jurisdiction," being "more akin to random gratuitous contacts rather than purposeful availment of the benefits of New Jersey law and hence are likewise insufficient to establish specific jurisdiction."

The judge rejected defendants' request for sanctions, finding it substantively meritless as plaintiff's claims were not frivolous. In addition, the application was procedurally deficient because defendants did not serve the required frivolous claims letter on plaintiff.

Discovery ensued in accordance with the order. Plaintiff obtained documents by subpoena from RAB Lighting and Amerlux Lighting, showing that defendants had done business with both companies and that defendants had offered RAB Lighting a job candidate residing in New Jersey. RAB Lighting's website showed that it is headquartered in New Jersey. Amerlux Lighting's website showed that its only office in the United States was in New Jersey.

Defendants' answers to interrogatories certified that: (1) defendants had never owned any interest in any property located in New Jersey; (2) Marsh Ventures had never maintained an office in New Jersey; (3) Marsh Senior and Marsh Junior had never resided in New Jersey; (4) defendants had never registered to do business in New Jersey; (5) defendants had never been licensed

by any governmental body to work or do business in New Jersey; and (6) defendants had never filed any state tax returns in New Jersey.

As to any employers headquartered in New Jersey for whom defendants have recruited or attempted to recruit employees, defendants answered:

> (i) Defendants agreed with Amerlux Lighting to recruit a National Accounts Manager for the West Coast in 2016, which placement never worked out and which contractual arrangement terminated due to lapse; (ii) Defendants worked with RAB Lighting in or around 2016 submitting [two] candidates . . . [that] did not result in placement of either; (iii) Defendants recruited [a candidate] for RAB Lighting in or around October 2016 as Specification Sales manager in the Chicago Office, resulting in placement; (iii) Defendants recruited [another candidate] for RAB Lighting for RSM West Coast Los Angeles in or around January 2017, resulting in placement; (iv) Defendant recruited [a candidate] for Kreon in or around October 2017 as projects Engineer in the Bethpage, New York Office, resulting in placement; and (v) Defendants recruited [a candidate] for Kreon on or about April 8, 2019 as Mechanical Engineer in East Rutherford, New Jersey, resulting in placement.

In addition, Marsh Junior "traveled to New Jersey on or about November 9, 2019 to meet with a hiring authority from Kreon." Defendants further answered that they had not placed or attempted to place any job candidate with Zumtobel as a replacement for plaintiff or to take over any of plaintiff's job duties.

9

On March 11, 2020, plaintiff moved for reconsideration of whether the court had specific personal jurisdiction over defendants and for an award of attorney's fees as a discovery sanction. The judge issued an April 24, 2020 order and oral decision that: (1) denied reconsideration; (2) dismissed the complaint with prejudice for lack of personal jurisdiction; and (3) denied plaintiff's request for an award of attorney's fees.

In his oral decision, the judge found that defendants are a recruiting business that focuses on the commercial lighting industry. As for defendants' contacts with New Jersey, the judge found they placed candidates with a New Jersey company and earned a $50,000 commission. One of those candidates resided in New Jersey. Defendants performed a search for a second New Jersey company that "did not come to fruition with any hiring." Defendants placed two employees with a third New Jersey company. One of the defendants actually "traveled to New Jersey in connection with that work."

The judge reiterated that plaintiff, who resides in New Jersey, initiated the contact with defendants, located in Florida. He explained that "[d]efendant[s] [did] not reach out to plaintiff in any [fashion] until after the conduct at issue [had] occurred." Therefore, "the cause of action [did not] arise[] directly out of defendant[s'] contact with [the] foreign state." The judge concluded that there

was "no purposeful conduct of the defendant[s] that is directed toward New Jersey. The first contact . . . between the parties was . . . the unilateral activity of the plaintiff," and defendants only communicated with plaintiff "after the actionable event . . . ha[d] already taken place." After surveying the case law, the judge found no factual basis for specific personal jurisdiction and denied reconsideration of his prior decision. This appeal followed.

Plaintiff raises a single point for our consideration:

> THE SUPERIOR COURT OF NEW JERSEY HAS SPECIFIC PERSONAL JURISDICTION OVER DEFENDANTS.

"A defendant may move to dismiss a complaint on the ground of 'lack of jurisdiction over the person[.]'" Rippon v. Smigel, 449 N.J. Super. 344, 358 (App. Div. 2017) (alteration in original) (quoting R. 4:6-2(b)). The issue of personal jurisdiction "is a question of law." Ibid. (citing Mastondrea v. Occidental Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007)). Therefore, "[o]ur review is . . . de novo, while our review of the 'court's factual findings with respect to jurisdiction' is only to determine if those findings are supported by substantial, credible evidence in the record." Ibid. (quoting Mastondrea, 391 N.J. Super. at 268).

11

Here, the trial court determined that it lacked specific personal jurisdiction on defendants' motion to dismiss prior to discovery. We therefore assume that plaintiffs can establish their substantive allegations and assertions.[1] Baanyan Software Servs., 433 N.J. Super. at 476 (citing NCP Litig. Tr. v. KPMG LLP, 187 N.J. 353, 365-66 (2006)).

"[T]he Due Process Clause of the Fourteenth Amendment limits the personal jurisdiction of state courts over nonresident civil defendants." Jardim v. Overley, 461 N.J. Super. 367, 375 (App. Div. 2019) (citing Pennoyer v. Neff, 95 U.S. 714, 733 (1877)). Our "courts may exercise personal jurisdiction over a non-resident defendant 'consistent with due process of law.'" Baanyan Software Servs., 433 N.J. Super. at 473 (quoting R. 4:4-4(e)). Therefore, "a nonresident defendant must have certain 'minimum contacts' with the forum state, 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Jardim, 461 N.J. Super. at 375 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "[P]laintiff bears the burden of showing sufficient facts to establish jurisdiction." Id. at 375 (citing Blakey v. Cont'l Airlines, Inc., 164 N.J. 38, 71 (2000)). Applying these

---

[1] The discovery permitted by the trial court related to general jurisdiction. The court had already determined that it lacked specific jurisdiction.

principles, "we consider whether [plaintiff] has met [his] burden of establishing a prima facie basis for exercising [specific] personal jurisdiction over defendant[s]." Baanyan Software Servs., 433 N.J. Super. at 476. "[T]he fact-specific nature of the jurisdictional assessment . . . must be conducted on 'a case-by-case basis.'" Jardim, 461 N.J. Super. at 377 (quoting Bayway Ref. Co., 333 N.J. Super. at 429). The court must consider "the burden on the defendant, the interests of the forum State and the plaintiff's interest in obtaining relief." Asahi Metal Indus., 480 U.S. at 113.

The Supreme Court has recognized both "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., ___ U.S. ___, ___, 137 S. Ct. 1773, 1780 (2017) (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). Here, plaintiff does not contend that Marsh Ventures, which is located in Florida, and Marsh Senior and Marsh Junior, who both reside in Florida, are amenable to general jurisdiction in the state courts of New Jersey. Instead, we must examine whether defendants' involvement with plaintiff creates specific jurisdiction over them in this State.

As we explained in Baanyan Software Servs.:

> Specific jurisdiction is available when the "cause of action arises directly out of the defendant's contacts

13

with the forum state." Waste Mgmt., Inc. v. The Admiral Ins. Co., 138 N.J. 106, 119 (1994). In this context, a "minimum contacts inquiry must focus on the relationship among the defendant, the forum, and the litigation." Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989). The minimum contacts requirement is satisfied "so long as the contacts expressly resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." Ibid. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)). "In determining whether the defendant's contacts are purposeful, a court must examine the defendant's 'conduct and connection' with the forum state and determine whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Ref. Co, v. State Utils., Inc., 333 N.J. Super. 420, 429 (App. Div. 2000) (quoting World-Wide Volkswagen Corp., 444 U.S. at 297).

Stated otherwise, when the defendant is not present in the forum state, "it is essential that there be some act by which the defendant purposefully avails herself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws.'" Waste Mgmt., 138 N.J. at 120 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). This "purposeful availment" requirement ensures that an out-of-state defendant will not be haled into court based on "random, fortuitous or attenuated contacts or as a result of the unilateral activity of some other party." Id. at 121; see also Blakey, 164 N.J. at 67.

[433 N.J. Super. at 474-75 (alteration in original).]

New Jersey courts have "focused upon whether the contacts in question 'resulted from the defendant's purposeful conduct and not the unilateral activities

14

of the plaintiff.'" Jardim, 461 N.J. Super. at 377-78 (quoting Lebel, 115 N.J. at 323). So too has the United States Supreme Court. "The plaintiff's claims . . . 'must arise out of or relate to the defendant's contacts' with forum." Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., ___ U.S. ___, 141 S. Ct. 1017, 1020 (2021) (quoting Bristol-Myers, 137 S. Ct. at 1780). "[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers, 137 S. Ct. at 1781 (quoting Goodyear, 564 U.S. at 919).

"In the context of specific jurisdiction, the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). "[W]hen the cause of action arises directly out of a defendant's contacts with the forum state, the state may exercise 'specific' jurisdiction over a defendant who has 'minimum contacts' with the state." Rippon, 449 N.J. Super. at 359 (citing Lebel, 115 N.J. at 322). It is this requirement that plaintiff cannot meet.

We have previously held that "telephonic and electronic communications with individuals and entities located in New Jersey alone, are insufficient

15

minimum contacts to establish personal jurisdiction over a defendant." Baanyan Software Servs., 433 N.J. Super. at 477 (citing Pfundstein v. Omnicom Grp., Inc., 285 N.J. Super. 245, 252 (App. Div. 1995)). The single, unsolicited LinkedIn electronic communication sent by plaintiff did not establish specific personal jurisdiction. Unlike in Lebel, defendants did not engage in a course of communications over a long period of time to induce plaintiff to utilize their services. See Jardim, 461 N.J. Super. at 381. Merely maintaining a non-interactive website, without more, is insufficient to establish personal jurisdiction. Jennings v. AC Hydraulic A/S, 383 F.3d 546, 550 (7th Cir. 2004).

There is no evidence in the record that that defendants sought out being retained by plaintiff as a job recruiter through advertising or marketing in New Jersey. Moreover, plaintiff did not enter into an oral or written contract with defendants or remit any payment to defendants. Indeed, defendants did not even respond to plaintiff's LinkedIn message prior to disclosing to plaintiff's employer that plaintiff was looking for a new job.

Additionally, defendants did not participate in finding a replacement for plaintiff. Any alleged improper disclosure of confidential information was communicated by defendants in Florida to a company located in New York.

16

We recognize that defendants were aware that plaintiff resided in New Jersey and that "[t]here is no requirement that the defendant ever be physically present in the forum state." Baanyan Software Servs., 433 N.J. Super. at 475. However, "mere awareness of [plaintiff's] domicile is not the equivalent of purposeful availment." Jardim, 461 N.J. Super. at 383. Defendants did not target job-seeking clients in New Jersey. See ibid. We conclude that defendants' contacts with New Jersey are attenuated at best.

In sum, the judge's factual findings with respect to jurisdiction are supported by substantial, credible evidence in the record and his determination that the court lacked specific personal jurisdiction in this case was correct. Accordingly, the denial of plaintiff's motion for reconsideration was likewise appropriate. See Cummings v. Bahr, 295 N.J. Super. 374, 384-85 (App. Div. 1996) (recognizing that reconsideration is within the sound discretion of the trial court and should be utilized only when the court's decision is based on plainly incorrect reasoning or the court failed to consider material evidence). We therefore affirm the dismissal of plaintiff's complaint but modify the dismissal from "with prejudice" to "without prejudice," thereby enabling plaintiff the opportunity to bring a timely suit against defendants in Florida if he elects to do so. See Watkins v. Resorts Int'l Hotel & Casino, 124 N.J. 398, 415-16 (1991).

17

Affirmed as modified.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18