628 F.2d 1175
 1980-1 Trade Cases 63,261
 KRAMER MOTORS, INC., a California Corporation, Plaintiff-Appellant,
v.
BRITISH LEYLAND, LTD., British Leyland International, Ltd.,
and British Leyland Motor Corporation, Ltd.,
Defendants-Appellees.
 No. 78-3332.
 United States Court of Appeals,
Ninth Circuit.
 April 1, 1980.
As Amended May 30, 1980.
Rehearing Denied June 19, 1980.
 
 Harold J. Tomin, Los Angeles, Cal. (argued), Barry L. Guterman, Beverly Hills, Cal., on brief, for plaintiff-appellant.
 John R. Schoemer, Jr., Townley & Updike, New York City, David C. Phillips, Goldstein & Phillips, San Francisco, Cal. (argued), Louis P. Petrich, Youngman, Hungate & Leapoold, Los Angeles, Cal., Charles J. Wisch, San Francisco, Cal., on brief, for defendants-appellees.
 Appeal from the Southern District of California.
 Before GOODWIN and ANDERSON, Circuit Judges, and EAST*, District Judge.
 PER CURIAM:
 
 
 1
 Kramer Motors, Inc., a Santa Monica imported automobile dealer, lost its supply of Triumph automobiles in 1974 after the importer, British Leyland Motors, Inc. (BLMI), revised its marketing plan for British Leyland cars in the United States. In addition to other litigation,[1] Kramer commenced this action against three British corporations[2] which Kramer claimed had conspired to put it out of business in violation of federal law. Kramer appeals a judgment of dismissal for want of jurisdiction.
 
 
 2
 In Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406 (9th Cir. 1977), we reviewed the due process demands of in personam jurisdiction.
 
 
 3
 "(T)wo principal factors must be considered in determining whether a court may constitutionally exercise personal jurisdiction over a given corporate defendant: the significance of the defendant's contacts with the forum and the relationship of the cause of action to those forum contacts. * * * If the defendant corporation has sufficient deliberate 'minimum contacts' with the forum state, a court may acquire in personam jurisdiction over it in actions which arise from those contacts. If, however, a corporation's activities in the forum are so 'continuous and systematic' that the corporation may in fact already be said to be 'present' there, it may also be served in causes of action unrelated to its forum activities." Id. at 412-413.
 
 
 4
 In Wells Fargo, id. at 418, we recognized that when a federal statute such as 15 U.S.C. § 22 authorizes worldwide service of process, it may be proper[3] to consider whether an alien defendant's contacts with the entire United States provide adequate grounds for asserting personal jurisdiction consistent with due process. See Driver v. Helms, 577 F.2d 147, 154-157 (1st Cir. 1978), rev'd on other grounds, Stafford v. Briggs, 444 U.S. 527, 100 S.Ct. 774, 63 L.Ed.2d 1 (1980); Leasco Data Processing Equipment Corp. v. Maxwell, 468 F.2d 1326, 1339-1343 (2d Cir. 1972). Kramer urges us to thus "aggregate" the defendants' United States contacts for the purpose of deciding this case. But even were we to do so, we would find that Kramer has failed to show contacts sufficient to support jurisdiction upon any of its several theories.[4]
 
 
 5
 Presence Through an "Agent" or "Alter Ego"
 
 
 6
 The record reveals the following: At various times, some directors of the British defendants have sat on the board of BLMI, the United States importer subsidiary. From 1971 to 1975 the president of BLMI served as a director of BLIL, its British parent (see n.2). At times relevant to this action, BLIL was generally responsible for the sale of British Leyland products outside the United Kingdom, had general executive responsibility for the operation of BLMI, and reviewed and approved its major policy decisions. BLIL has guaranteed obligations of BLMI to United States banks. Executives of the British companies work closely with executives of BLMI on pricing of vehicles for the United States market and sometimes travel to the United States for talks on pricing. United States residents, through a "personnel export screen," can originate a car purchase through BLMI, then go to Europe on vacation, pick up the car there and bring it back to the United States. BLIL approved the BLMI proposal for consolidating distribution of British Leyland vehicles within the United States.
 
 
 7
 These facts are insufficient to make BLMI an "alter ego" or "agent" of any of the British corporations so as to make any of them subject to jurisdiction solely through BLMI's presence in the United States. See Wells Fargo, supra, 556 F.2d at 419-422. The record does not show that executives and directors of the British corporations ever controlled the BLMI board or formed a board majority. None of the United Kingdom companies controls[5] the internal affairs of BLMI or determines how it operates on a daily basis. BLMI has primary and exclusive responsibility for the distribution, marketing, and sale of British Leyland vehicles, parts and accessories within the United States. BLIL did not implement or supervise the reorganization plan. It proposed no changes in the plan. The parent and subsidiary have dealt with each other as distinct corporate entities.
 
 Minimum Contacts
 
 8
 In addition to the above facts, the record shows the following United Kingdom-United States British Leyland contact: One company "within British Leyland" is party to a contract to distribute tractors in the United States. Another supplies marine engines to a company in the Boston area. A third once sold eight double-decker buses to the New York Metropolitan Transit Authority. The three companies are not defendants in this action. These contacts, together with the presence in the United States of BLIL's subsidiary BLMI, see discussion supra, do not show such "continuous and systematic activity" in the United States by BLMC, BLIL, or BLL (see n.2) as would subject any of them to jurisdiction on a cause of action unrelated to the activity.
 
 
 9
 Even a single contact, however, may support personal jurisdiction over a defendant in an action arising out of that particular contact. A foreign act having an effect in the forum may satisfy the minimum contact requirement. McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). But in each such case the defendant must have done some act by which it purposely avails itself of the benefits and protections of forum law. Kulko v. Superior Court, 436 U.S. 84, 93-94, 98 S.Ct. 1690, 1697-1698, 59 L.Ed.2d 132 (1978); see Wells Fargo, supra, 556 F.2d at 413.
 
 
 10
 The record discloses no act by BLL or BLMC which gave rise to this cause of action. BLIL, however, did approve (an act) the marketing scheme which when implemented eventually caused Kramer to lose its supply of Triumph automobiles (the effect). BLIL and BLMI obviously shared an interest in promoting British Leyland car sales. But the British parent's mere approval of a marketing scheme developed by its United States subsidiary does not constitute the kind of deliberate forum protection-invoking act which the law requires. World-Wide Volkswagen Corporation v. Charles S. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
 
 
 11
 The United States Court of Appeals for the Second Circuit has stated that the foreign-acts-with-forum-effects jurisdictional principle "must be applied with caution, particularly in an international context." Leasco Data Processing Equipment Corp. v. Maxwell, supra, 468 F.2d at 1341. The British government's 95 percent ownership of BLL warrants particular caution in this case, as it provokes questions regarding the capacity of United States courts to review the validity of foreign acts of state. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 416-439, 84 S.Ct. 923, 934-946, 11 L.Ed.2d 84 (1964).
 
 
 12
 Affirmed.
 
 
 
 *
 The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 In a separate action, Kramer Motors, Inc. v. British Leyland Motors, Inc., et al., No. 78-1303, argued and submitted January 8, 1980 (9th Cir.), Kramer had earlier brought conspiracy claims against various American corporations, including:
 (1) British Leyland Motors, Inc. (BLMI), the importer wholly owned by British Leyland International, Ltd.;
 (2) Leyland Motor Sales, Inc. (LMS), a dealer wholly owned by BLMI; and
 (3) British Motor Car Distributors, Inc., the dealer which took over southern California Triumph distribution from LMS, and which thereafter declined to offer Kramer a contract.
 Both lawsuits arose from the "nonrenewal" of Kramer's dealer contract.
 
 
 [2]
 The defendants are:
 (1) British Leyland Ltd. (BLL), the top holding company for separate manufacturers and marketers of British Leyland products. The United Kingdom government owns 95 percent of BLL.
 (2) British Leyland Motor Corporation, Ltd. (BLMC), the top holding company at the time Kramer's dealer contract terminated. (BLL now owns BLMC.)
 (3) British Leyland International, Ltd. (BLIL), the overseas marketer of British Leyland products at the time Kramer's contract terminated. BLIL then owned BLMI, the United States importer.
 
 
 [3]
 The court did not have occasion to decide the issue, since the statute before it, the Lanham Act, granted no such broad service of process powers
 
 
 [4]
 Thus, we need not decide, in this case, whether aggregation is proper
 
 
 [5]
 This and the following sentence are written in the present tense because defendants used the present tense in responding to Kramer's interrogatory. The interrogatory, however, sought responses "for each of the years from 1966 to date." Defendants stated that they would give answers for the period from February 1968 through December 1977. Thus, we can fairly read their answers, though worded in the present, to cover that entire period. Even if the answers do apply only to the present, the record does not support a different conclusion for years past