[No. A035468. First Dist., Div. Four. Nov. 30, 1987.]

J. M. SAHLEIN MUSIC COMPANY, INC., Plaintiff and Appellant,
v.
NIPPON GAKKI CO., LTD., Defendant and Respondent.

COUNSEL

James Duryea, Jr., James W. Moore, David E. Russo and Charles S. Holden for Plaintiff and Appellant.

Jamie M. Bennett, Hogan & Hartson, Curtis Karnow and Landels, Ripley & Diamond for Defendant and Respondent.

OPINION

SABRAW, J.—Plaintiff J. M. Sahlein Music Company, Inc. (Sahlein) appeals from an order quashing service of summons on defendant Nippon Gakki Co., Ltd. (Nippon Gakki). We find the forum and claim-related contacts identified by plaintiff insufficient to warrant personal jurisdiction over defendant, and affirm.

## BACKGROUND

According to the second amended complaint, Nippon Gakki is a Japanese corporation which manufactures acoustic guitars. Nippon Gakki sells the guitars to its subsidiary, defendant Yamaha International Corporation (Yamaha), which imports them. Yamaha and Sahlein are both California corporations. Yamaha has apparently acceded to jurisdiction and is not a party to this appeal.

The complaint charges that Yamaha wrongfully terminated Sahlein's distributorship of acoustic guitars manufactured by Nippon Gakki. The fifth cause of action charges that Nippon Gakki conspired with Yamaha to interfere with the advantageous relationships between Sahlein and its customers.

Service of process was effected on Nippon Gakki by mail in Japan. After discovery was conducted on the jurisdictional issues, Nippon Gakki moved to quash service. The trial court granted the motion. The appeal lies (Code Civ. Proc., § 904.1, subd. (c)), and is timely (Cal. Rules of Court, rules 2(a), 2(b)(3).)

## ANALYSIS

The courts of this state may exercise personal jurisdiction on any basis consistent with the state and federal Constitutions. (Code Civ. Proc., § 410.10.) ■ Under the due process clause of the federal Constitution, the basic prerequisite for personal jurisdiction is that the defendant have such "minimum contacts" with the forum state that maintenance of suit would not offend " 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 102, 66 S.Ct. 154, 161 A.L.R. 1057]; *Helicopteros Nacionales de Colombia* v. *Hall* (1984) 466 U.S. 408, 414 [80 L.Ed.2d 404, 411, 104 S.Ct. 1868, 1872].)

If a defendant has sufficiently extensive "contacts" with the forum state, it may be subject to suit there on all claims wherever they arise. (*Helicopteros Nacionales, supra,* 466 U.S. at p. 414 [80 L.Ed.2d at p. 411].) In other cases, the jurisdictional sufficiency of the defendant's contacts depends on an assessment of the " 'relationship among the defendant, the forum, and the litigation.' " (*Helicopteros Nacionales, supra,* 466 U.S. 408, 414 [80 L.Ed.2d 404, 411, 104 S.Ct. 1868], quoting *Shaffer* v. *Heitner* (1977) 433 US. 186, 204 [53 L.Ed.2d 683, 698, 97 S.Ct. 2569].) ■ Here, Sahlein disavows any claim that Nippon Gakki has such extensive contacts with California as to be subject to "general" jurisdiction. Therefore the dispositive question is whether Nippon Gakki's forum-related contacts warrant personal jurisdiction with respect to the specific claim for interference with Sahlein's business.

The contacts asserted by Sahlein to support jurisdiction are (1) Nippon Gakki's parent-subsidiary relationship with Yamaha; (2) Nippon Gakki's contractual relationship with Yamaha; (3) communications "between" Nippon Gakki and Yamaha concerning the acoustic guitar business; (4) visits by Nippon Gakki personnel to California to review Yamaha operations; (5)

Nippon Gakki's general activities in California and nationwide to promote its products; (6) Nippon Gakki's receipt of proceeds from the sale of guitars to Yamaha and of cash distributions from Yamaha; and (7) communications "between" Nippon Gakki and Yamaha concerning the events which culminated in the termination of Sahlein's distributorship.

Of the seven categories noted, only the last comes close to being claim-related. The remaining six consist of nothing more than would normally be expected where a domestic corporation is owned by, and has contracted with, a foreign corporation. ■ But the ownership of a locally incorporated subsidiary does not warrant the exercise of jurisdiction over a foreign corporation unless the foreign parent "manipulates the subsidiary to the detriment of creditors or the subsidiary is the *alter ego* of the parent. (*Empire Steel Corp.* v. *Superior Court* (1961) 56 Cal.2d 823, 831 [17 Cal.Rptr. 150, 366 P.2d 502].)" (*Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 274 [131 Cal.Rptr. 231, 551 P.2d 847]; see *Cannon Mfg. Co.* v. *Cudahy Co.* (1925) 267 U.S. 333 [69 L.Ed. 634, 45 S.Ct. 250].) No such showing is attempted here and Sahlein appears to concede that the parent-subsidiary relationship is not sufficient to subject Nippon Gakki to jurisdiction.

■ Sahlein places great reliance on Nippon Gakki's entry into a written contract appointing Yamaha as its exclusive master distributor in the United States. The contract provides that California law will govern its enforcement and interpretation. These factors would tend to support the exercise of jurisdiction over Nippon Gakki in a suit arising from the contract. (See *Burger King Corp.* v. *Rudzewicz* (1985) 471 U.S. 462 [85 L.Ed.2d 528, 547, 105 S.Ct. 2174, 2187].) However, the present claim does not arise from the contract, except perhaps in the extremely broad sense that *all* of Yamaha's activities may have involved the exercise of rights and powers derived from the contract. Jurisdiction cannot rest on such a slender reed. An asserted contact must be something more than a remote "link in the chain of events" leading to the litigation. (*Pacific Atlantic Trading Co.* v. *M/V Main Exp.* (9th Cir. 1985) 758 F.2d 1325, 1329.)

The case of *Hylwa* v. *Palka* (9th Cir. 1987) 823 F.2d 310 cited by Sahlein, is distinguished on this ground. The dispute there arose from a personal services contract between a California resident and a foreign defendant. In contrast, Sahlein is a stranger to the contract and Sahlein's claim has no substantial connection with it.

Nippon Gakki's manufacturing and marketing activities, and its receipt of benefits from those activities, might support jurisdiction in an action

arising from those activities or from the product itself. This is the situation presented in most of the cases relied on by Sahlein. (See *Davis* v. *Superior Court* (1976) 62 Cal.App.3d 484 [133 Cal.Rptr. 115] [local promotion of contraceptive device by its developers supported jurisdiction over them in action for personal injuries]; *Buckeye Boiler Co.* v. *Superior Court* (1969) 71 Cal.2d 893 [80 Cal.Rptr. 113, 458 P.2d 57] [manufacturer subject to jurisdiction for personal injuries caused by defective product]; *Rowe* v. *Dorrough* (1984) 150 Cal.App.3d 901 [198 Cal.Rptr. 131] [order quashing service on manufacturer of Yamaha motorcycles reversed in personal injury action]; *Rice Growers Assn.* v. *First National Bank* (1985) 167 Cal.App.3d 559 [214 Cal.Rptr. 468] [financers, builder, and designer of ship intended for use in California held subject to jurisdiction in suit alleging defects]; but see *Asahi Metal Ind.* v. *Super. Ct. of Cal., Solano Cty.* (1987) 480 U.S. 102 [94 L.Ed.2d 92, 107 S.Ct. 1026], revg. (1985) 39 Cal.3d 35 [216 Cal.Rptr. 385, 702 P.2d 543] [unreasonable to exercise jurisdiction in indemnity cross-action against foreign manufacturer of tire part].) The point is not simply that most of these cases involved personal injuries. The point is that they presented a substantial link between acts by the defendant, the forum state, and the injuries for which redress was sought. Without some similar connection here, we fail to see how it would be consistent with "fair play and substantial justice" to hold Nippon Gakki subject to jurisdiction in a dispute arising from the severance of a relationship between an importer and distributor of its products.

Nippon Gakki contends that all nonclaim-related contacts are wholly irrelevant to the jurisdictional analysis. We need not go that far to dispose of this case. As noted above, the focal point of the analysis must be the interrelationship of the defendant's conduct, the forum, and the claim. For present purposes it is enough to observe that the less substantial that interrelationship, the less the jurisdictional weight of the contact in question. The contacts discussed above have at best a remote and general relationship to Sahlein's claim. Their jurisdictional significance is correspondingly slight.

Sahlein asserts, however, that the record does reflect forum-related contacts closely related to the claim, consisting of electronic correspondence between Nippon Gakki and Yamaha preceding Yamaha's decision to terminate existing distributorships and assume the distributors' role itself. What Sahlein overlooks is that all but two of these communications were sent by Yamaha to Nippon Gakki. Nippon Gakki's only conduct in connection with those communications was to receive (and presumably read) them. Such conduct, if a jurisdictional "contact" at all, is an extremely weak one. ■ The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has

sufficient contacts with a forum State to justify an assertion of jurisdiction." (*Helicopteros Nacionales, supra,* 466 U.S. at p. 417 [80 L.Ed.2d at p. 412].)

 This leaves Sahlein to rely on two electronic messages from Messrs. Hasegawa and Terui of Nippon Gakki to Mr. Miyake of Yamaha.[1] Both messages expressed opposition to Yamaha's plan to eliminate its wholesale distributors. While it is true that the issue on a motion to quash is not whether the ultimate issues of liability will be resolved in the plaintiff's favor (*Inselberg* v. *Inselberg* (1976) 56 Cal.App.3d 484, 489 [128 Cal.Rptr. 578]), nevertheless, when the plaintiff seeks to predicate jurisdiction on causing tortious effects in the forum state and when the record tends unequivocally to establish that the defendant's conduct did not cause such effects, the plaintiff "cannot demand that we judge the question of jurisdiction in the light of a claim he apparently does not have." (*Regents of University of New Mexico* v. *Superior Court* (1975) 52 Cal.App.3d 964, 970, fn. 7 [125 Cal.Rptr. 413].)

The most closely analogous case presented by either party is *Kramer Motors, Inc.* v. *British Leyland, Ltd.* (9th Cir. 1980) 628 F.2d 1175, cert. denied 449 U.S. 1062 [66 L.Ed.2d 604, 101 S.Ct. 785], in which an automobile dealer sued a British marketing corporation for allegedly conspiring to put it out of business. The defendant's product was imported by a domestically incorporated subsidiary with which it shared some common officers and directors. (*Id.,* at p. 1177.) The foreign parent also "had general executive responsibility for the operation of [the subsidiary], and reviewed and approved its major policy decisions." (*Ibid.*) Most significantly, the parent was shown to have approved the marketing scheme which resulted in the termination of the plaintiff's dealership. (*Ibid.*) The court held that the evidence did not support a finding of alter ego, and that the approval of the marketing plan "does not constitute the kind of deliberate forum protection-invoking act which the law requires." (628 F.2d at p. 1178.)

Sahlein attempts to explain *Kramer Motors* on the ground that the defendant there was largely owned by a foreign government and the court deemed it appropriate to exercise "particular caution" because the act of state doctrine might apply. (628 F.2d at p. 1178.) As we read the case, however, those factors merely added weight to the general rule that "the foreign-acts-with-forum-effects jurisdictional principle 'must be applied with caution, particularly in an international context.'" (*Ibid.,* quoting *Leasco Data Processing Equipment Corp.* v. *Maxwell* (2d Cir. 1972) 468

---

[1] Nippon Gakki asserts that these messages were sent to Michigan, not California. However, no record citation is provided (see Cal. Rules of Court, rule 15(a)), and we find no clear record support for the assertion.

F.2d 1326, 1341.) ▆ Since *Kramer Motors* was decided the United States Supreme Court has wholeheartedly endorsed this rule: "In every case, . . . [the interests of other nations] as well as the Federal interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction in the particular case, and of an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. 'Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.' (*United States* v. *First National City Bank,* 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting)." (*Asahi Metal Ind., supra,* 480 U.S. at p. 115 [94 L.Ed.2d at p. 106, 107 S.Ct. at pp. 1034-1035].)

▆ The trial court correctly found the record before it insufficient to warrant an exercise of jurisdiction over this defendant with respect to this claim. The judgment is affirmed.

Anderson, P. J., and Poché, J., concurred.