**Binks A. GRAVAL, Plaintiff,**

v.

**P.T. BAKRIE & BROTHERS, P.T. Bakrie Nusantara Corporation, P.T. Bakrie Investindo, and Timeswitch Investment Ltd. Defendants.**

**No. CV–95–4336 KMW (SHx).**

United States District Court,
C.D. California.

April 12, 1996.

---

**1328**

Vincent E. Caracci, Vincent E Caracci Law Offices, Jackson, MS, Paul A Buckley, Paul A. Buckley Law Offices, Los Angeles, CA, for Binks A. Graval, plaintiff.

David Huebner, William Mielke Walker, Coudert Brothers, Los Angeles, CA, for PT Bakrie & Brothers, PT Bakrie Nusantara Corporation, PT Bakrie Investindo, Timeswitch Investment Limited, defendants.

## ORDER

CONSUELO BLAND MARSHALL,
District Judge.

### I. BACKGROUND

Plaintiff Binks A. Graval ("Graval") has brought this action for breach of contract against four foreign corporations, P.T. Bakrie & Brothers ("B & B"), P.T. Bakrie Nusantara Corporation ("Nusantara"), P.T. Bakrie Investindo ("Investindo"), and Timeswitch Investment Ltd. ("Timeswitch"). Graval alleges that he entered into a contract with some or all of the above-named defendants for the purpose of developing business opportunities for the defendants in the People's Republic of China. Graval further alleges that after expending time and money developing various business opportunities in China, pursuant to this contract, the defendants breached by abandoning these projects without compensating Graval.

The Bakrie family is a wealthy Indonesian family with a number of investments throughout the world, including the four named defendant corporations. In his complaint, Graval has attempted to group these four defendants as a single entity, which he refers to as the "Bakrie Group". Graval contends that these four defendants are "holding companies for the vast assets of the Bakrie Family of Indonesia." *See* Opposition at 2. Thus, Graval assumes he can treat them as a single entity for purposes of this litigation.

The complaint makes all of its allegations against the "Bakrie Group" or "Bakrie", referring to all four of the defendants. Graval has not alleged that each company is the "alter-ego" of the other, or that the defendants used these other companies to commit fraud on the plaintiff. In fact, plaintiff has not presented any evidence that would support such a contention.

The evidence presented to the Court indicates, at the most, that these defendants are in a parent-subsidiary relationship, or that they are separate, independent investments of a wealthy family.

Based on Graval's assumption that these defendants could be treated as a single entity, he has attempted to serve process on and exert jurisdiction over each of these defendants as if they were one and the same. Defendants B & B, Nusantara, and Investindo have filed a motion to dismiss for insufficiency of service of process, contending that none of Graval's attempts at service upon them have been valid. Defendant Timeswitch has filed a motion to dismiss for lack of personal jurisdiction, contending that their contacts with California are virtually nonexistent and jurisdiction would be unreasonable.

This Court, having considered all of the papers submitted in support of and in opposition to this motion, and having heard oral argument, hereby **GRANTS** defendants B & B, Nusantara, and Investindo's motion to dismiss for insufficiency of process without prejudice. The Court also **GRANTS** defendant Timeswitch's motion to dismiss for lack of personal jurisdiction.

### II. DISCUSSION

*A. Insufficiency of Process*

*Statutory Framework of Rule 4*

Rule 4 of the Federal Rules of Civil Procedure describes the manner in which service of process must be made in order to subject the defendant to the jurisdiction of the court. Absent a waiver of formal service by the defendant, this rule must be complied with or there is no personal jurisdiction.[1] *See Jackson v. Hayakawa,* 682 F.2d 1344, 1347 (9th Cir.1982).

---

**1.** None of the defendants challenging service of process have waived formal service.

The Ninth Circuit has stated that, "[n]either actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." *Id.* (citations omitted); *see also Mateo v. M/S KISO,* 805 F.Supp. 792, 794 (N.D.Cal.1992) ("Without substantial compliance with Rule 4, it is irrelevant whether a defendant has notice of a plaintiff's claims.")

Defendants B & B, Nusantara, and Investindo are all foreign corporations incorporated under the laws of Indonesia. Rule 4(h) and 4(f) provide the framework of this Court's analysis in order to determine whether service on these foreign defendants was proper.

Rule 4(h)(2) provides that service upon a foreign corporation in a place not within any judicial district of the United States shall be done "in any manner prescribed for individuals by subdivision (f) except personal delivery ..." Fed.R.Civ.P. 4(h)(2).

Rule 4(f) providing for service upon individuals in a Foreign Country, allows for service in the following ways:

(1) by any internationally agreed means reasonably calculated to give notice, i.e. the Hague Convention;[2]

(2) if there is no internationally agreed means of service, then service can be effected:

 (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction;

 (B) as directed by the foreign authority in response to a letter rogatory or letter of request;

 (C) unless prohibited by the law of the foreign country, by:

(i) personal delivery (except for a foreign corporation; *see* 4(h)(2))

(ii) any form of mail requiring a signed receipt, addressed and dispatched by the clerk of the court;

(3) by other means not prohibited by international agreement as may be directed by the court.

*Attempted Service by Mail*

■ Graval asserts a number of different methods by which service upon these defendants has been effected. First, Graval contends that service was effected pursuant to 4(f)(2)(C)(ii) because the Clerk of the Court sent the summons and complaint to the President Directors of the corporations via registered mail, return receipt requested. Plaintiff admits that the Indonesian postal authorities have not returned the delivery receipts. *See* Opposition at 18.

Plaintiff further argues that the defendants' failure to deny receiving this registered mail "is enough to prove that the Clerk's service was delivered and received." Opposition at 18.

Regardless of whether a Court could presume service by the fact that the delivery receipt was never returned, a conclusion that seems to contrary to Rule 4(1)[3], plaintiff's argument must fail.

Rule 4(f)(2)(C)(ii) allows for service via mail requiring a return receipt **unless prohibited by the law of the foreign country.** Indonesian law, as plaintiff's own Indonesian lawyers have advised him, prohibits service by mail, including service by mail with a return receipt requested. *See* Plaintiff's Exhibits 16D–16F, at 360–363 (correspondence between plaintiff's attorney and retained Indonesian counsel re: permissible methods of service in Indonesia). Therefore, plaintiff's attempted service pursuant to Rule 4(f)(2)(C)(ii) is invalid.[4]

**2.** There is no applicable treaty or internationally agreed upon means for service of process with Indonesia, such as the Hague Convention.

**3.** Rule 4(1) provides that for service in a place not within any judicial district of the United States, the plaintiff must produce "a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court." Fed.R.Civ.P. 4(1).

**4.** Plaintiff attempts to distinguish between the fact that service by mail is not permitted under Indonesian law from the fact that it is not explicitly prohibited under Indonesian law. In light of the fact that these rules regarding overseas service of process are meant to minimize offense to

*Request for Court to Invoke Extraordinary Means of Service*

■ In the alternative, Graval requests this Court to direct service of process "by other means not prohibited by international agreement as may be directed by the court", pursuant to Rule 4(f)(3). Fed.R.Civ.P. 4(f)(3). The advisory notes to this provision indicate that this rule is intended as a last resort, only to be employed when there are no other feasible alternatives.

The advisory notes state that:

Service by methods that would violate foreign law is not generally authorized. Subparagraphs (A) [which provides for service in the manner prescribed by the foreign law] and (B) [which provides for service as directed by the foreign authority in response to a letter rogatory or letter of request] prescribe the more appropriate methods for conforming to local practice or using a local authority.

Fed.R.Civ.P. 4(f), Advisory Committee's Notes, 1993 Amendment.

The advisory notes state that when a court directs service of process under this provision, "an earnest effort should be made to devise a method of communication that is consistent with due process and minimizes offense to foreign law." Id.

Graval admits in his Opposition that he has not attempted service "through traditional diplomatic channels" pursuant to Rule 4(f)(2)(B). Opposition at 14. Rule 4(f)(2)(B) authorizes service of process "as directed by the foreign authority in response to a letter rogatory or letter of request". Fed.R.Civ.P. 4(f)(2)(B). Not only do the advisory notes indicate that sending a letter rogatory or letter of request to the proper foreign authority is a more appropriate means to attempt service, but plaintiff's own Indonesian counsel recommended this method as the most appropriate means of serving process on these defendants. *See* Plaintiff's Exh. 16B at 356. Plaintiff's only excuse for not utilizing this method of service was because his counsel thought it would be futile.

Plaintiff's contention that diplomacy would be ineffective is unsubstantiated. Plaintiff implies that because the Indonesian postal service does not honor service of process by mail requesting a return receipt, that the Indonesian government is so corrupt that it would not honor a diplomatic request to serve a complaint on these defendants. The Court finds plaintiff's leap of logic without merit.

Plaintiff can comply with Rule 4, and Indonesian law, simply by requesting the Court to issue a letter rogatory or letter of request to the proper diplomatic authority. Plaintiff's other attempts to effect service of process on these three defendants have failed. Therefore, service is quashed.

*Alleged "Constructive" Service of Process*

Additionally, plaintiff asserts that these defendants have received "constructive" service of process. Plaintiff cites absolutely no authority, federal or state, which allows constructive service of process. In fact, the Ninth Circuit has made clear that Rule 4 must be complied with even if the defendants have actual notice of the complaint. *See Jackson v. Hayakawa, supra,* 682 F.2d 1344, 1347 (9th Cir.1982).

■ Graval served a summons and copy of the complaint on the remaining defendant Timeswitch, pursuant to the Hague Convention[5], and on Noller Communications, Inc. ("Noller"), a non-party corporation in California. Plaintiff argues, unpersuasively, that service upon these entities should be sufficient to effect service on the three Indonesian corporate defendants.

Timeswitch is a corporation incorporated under the laws of the Isle of Man, United Kingdom. Timeswitch is apparently a subsidiary of Nusantara. Under California law, service on a subsidiary does not constitute service on a parent corporation, even if the subsidiary is considered to be an "alter-ego" of the parent corporation. *Gravely Motor Plow & Cultivator Co. v. H.V. Carter Co.,*

---

foreign law, *see* Fed.R.Civ.P. 4(f), Advisory Committee's Notes, 1993 Amendment, the Court finds this distinction without merit.

**5.** Timeswitch does not contest the sufficiency of process. Its motion is only for lack of personal jurisdiction.

*Inc.,* 193 F.2d 158, 161 (9th Cir.1951) (decided under California law); *Orion Tire Corp. v. General Tire, Inc.,* No. CV 92–2391, 1992 WL 295224, at *1 (C.D.Cal. Aug.17, 1992).[6] Therefore, Graval's argument that service was effected on the Indonesian defendants by serving Timeswitch is without merit.

■ Plaintiff's argument with respect to Noller is even more attenuated. Noller is a publicly held, California corporation engaged in telecommunications research and development. Timeswitch owns 42% of Noller's outstanding shares of stock, the Bakrie Communications Corporation (not a party to this lawsuit) owns 42% of stock, and the remaining shares are owned by private American citizens. None of the three Indonesian corporate defendants in this case own any shares of Noller stock. *See* Defendants' Motion, Decl. of P. Nichols at 12, ¶ 3.

Nowhere in Fed.R.Civ.P. 4 does it state that a foreign company is subject to service simply because a different foreign company in which it has invested has, in turn, invested in a domestic corporation that plaintiff has served. Similarly, California statutes do not provide for service in this manner. *Cf. Orion,* No. CV 92–2391, 1992 WL 295224, at *1 (C.D.Cal. Aug.17, 1992) (holding that service of a foreign corporation via a domestic subsidiary is invalid under California law).

Plaintiff contends that, alternatively, Noller should be treated as the "general manager" of the Indonesian defendants for purposes of accepting service of process. This proposition is baseless in light of the undisputed evidence that "Noller is not the designated agent for service of process of the Bakrie Defendants, Noller is not authorized to receive service of process on behalf of the Bakrie Defendants, and ... Noller has never been held out by the Bakrie Defendants as the Bakrie Defendants' agent." Nichols Decl. at 12–13, ¶ 4. Plaintiff has not presented any evidence that would even suggest this type of relationship between Noller and any of the defendants in this action.

Plaintiff contends that service on Noller should be sufficient because one of Noller's directors is a director for one of the defendant corporations, and therefore this director had "actual notice".

*Summary*

Plaintiff Graval has failed to effect service upon defendants B & B, Nusantara, and Investindo. None of the methods attempted by Graval was sufficient, and therefore, defendants' Motion to Quash Service of Process is **GRANTED**.

*B. Lack of Personal Jurisdiction over Timeswitch*

Defendant Timeswitch has filed a motion to dismiss for lack of personal jurisdiction.[7] Plaintiff's complaint and opposition to this motion suffer from the same defects described above; namely, plaintiff assumes that the acts attributable to other corporate defendants can be automatically attributed to Timeswitch, a separate, independent corporation, incorporated under the Isle of Man, United Kingdom. *See* Opposition at 3.

*Standard for Personal Jurisdiction*

In order to establish personal jurisdiction over the defendant, the plaintiff "must demonstrate that the forum state's jurisdictional statute confers personal jurisdiction, and that the exercise of jurisdiction accords with federal constitutional principles of due process." *Shute v. Carnival Cruise Lines,* 897 F.2d 377, 380 (9th Cir.1990), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

Under the California long arm statute, the court can exercise jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. § 410.10. Therefore, it is only necessary to analyze whether the assertion of jurisdiction comports with due process under

---

**6.** It should be noted that plaintiff does not present any evidence that Timeswitch is the "alterego" of these Indonesian defendants. In any event, the Ninth Circuit has held that in the absence of statutory authority, service on an "alter ego" is invalid as against the parent. *Gravely Motor Plow & Cultivator Co. v. H.V. Carter Co.,*

*Inc.,* 193 F.2d 158, 161 (9th Cir.1951) (decided under California law).

**7.** Timeswitch was served pursuant to the Hague Convention, and therefore, does not contest service of process.

the U.S. Constitution. *See Rocke v. Canadian Auto. Sport Club,* 660 F.2d 395, 398 (9th Cir.1981).

Under the jurisdictional test enunciated in *International Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), "due process require[s] that non-resident defendants have certain minimum contacts with the forum state, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Shute,* 897 F.2d at 380.

■ In order for the court to have "general jurisdiction" over the non-resident defendant, the defendant's activities or contacts with the forum state must be " 'substantial' or 'continuous and systematic' ". *Id.* (quoting *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir.1986)).

In addition to having the requisite contacts with the forum state to establish jurisdiction, the Court must also determine whether exercising jurisdiction would be reasonable. *Amoco Egypt Oil Co. v. Leonis Navigation Co., Inc.,* 1 F.3d 848, 851 (9th Cir.1993).

The Supreme Court and the Ninth Circuit have indicated that the necessary contacts to establish general jurisdiction are quite high. *See Shute,* 897 F.2d at 380 (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984)). The Ninth Circuit has stated that "[t]he Supreme Court has upheld general jurisdiction only once ... and [we] regularly have declined to find general jurisdiction even where the contacts were quite extensive." *Amoco,* 1 F.3d at 851, n. 3.

If the court has "general jurisdiction" over the defendant, it may "hear cases unrelated to the defendant's forum-related activities." *Shute,* 897 F.2d at 380.

If the defendant's contacts are not sufficient to establish general jurisdiction, then "a court may nevertheless assert jurisdiction for a cause of action arising out of the defendant's activities within the forum." *Id.* at 381. This type of jurisdiction is referred to as "specific" or "limited" jurisdiction.

■ In order to establish "specific jurisdiction" over a non-resident defendant:

(1) The defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of the defendant's forum related activities; and (3) the exercise of jurisdiction must be reasonable.

*Shute,* 897 F.2d at 381; *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir.1986).

*General Jurisdiction*

■ It is obvious that Timeswitch does not have the necessary contacts with California to subject it to general jurisdiction. The only contact that Timeswitch has with California is a minority investment in Noller Communications, Inc., a California corporation. *See* Timeswitch's Motion, Seetharaman Decl. Noller is a wholly independent California corporation. Id. at 19, ¶ 3.

Timeswitch is incorporated under the laws of the Isle of Man, with its principal place of business in Douglas, Isle of Man, United Kingdom. Seetharaman Decl. ¶ 2. As the undisputed Declaration of T .R. Seetharaman, an officer of Timeswitch, indicates, Timeswitch has no other contacts with California other than its investment in Noller:

Timeswitch is not incorporated in California, nor has Timeswitch qualified to do business in California. Timeswitch has no subsidiaries incorporated or qualified to do business in California. Timeswitch has no agents in California and has never solicited business in California. . . .

None of Timeswitch's officers or directors reside or are domiciled in California, nor do they regularly travel to California.

Timeswitch has no employees based, residing or domiciled in California and has never recruited any employees in California. Timeswitch has never contracted with persons residing in California to act on its behalf with respect to marketing or distributing any of Timeswitch's services. . . .

Seetharaman Decl. at ¶¶ 2–5.

Graval offered no evidence to the contrary.

Timeswitch's investment in Noller is not sufficient to render Timeswitch subject to personal jurisdiction. The Ninth Circuit addressed this issue in *Church of Scientology of California v. Adams,* 584 F.2d 893, 896 (9th Cir.1978). The Court held that an ownership interest in an independent corporation was not sufficient to confer jurisdiction over the defendant.

Judge, now Justice, Kennedy stated:

Even in cases where the contacts of a parent or subsidiary are sufficient to subject it to personal jurisdiction, we recognize that the activities of one related corporation are irrelevant to the issue of jurisdiction over the other, so long as a separation between the corporations has been maintained.

*Church of Scientology,* 584 F.2d at 897.

Under Ninth Circuit and California law, "the ownership of a locally incorporated subsidiary does not warrant the exercise of jurisdiction over a foreign corporation unless the foreign parent 'manipulates the subsidiary to the detriment of creditors or the subsidiary is the alter ego of the parent.'" *J.M. Sahlein Music Co. v. Nippon Gakki Co., Ltd.,* 197 Cal.App.3d 539, 543, 243 Cal. Rptr. 4 (1987) (citations omitted); *see also Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177–1178 (9th Cir.1980).

Graval has not disputed the Declaration of the Timeswitch officer, T.R. Seetharaman, which states in part:

Timeswitch does not control Noller; rather, Noller operates as a wholly independent company from Timeswitch, a minority shareholder. To my knowledge, Noller's business is different from that of Timeswitch, Noller's personnel are separate and distinct from those of Timeswitch, and Noller makes its own employment decisions independent of Timeswitch. Noller's books of account and other business records are all kept at Noller's offices in Petaluma; no Noller books of account or business records are kept overseas at Timeswitch. All transactions between Noller and Timeswitch are recorded in Noller's books consistent with the requirements of recording transactions between wholly independent companies. Noller has separate auditors and counsel from Timeswitch. Noller and Timeswitch issue separate financial statements and file separate income tax returns. Salary checks for Noller's employees are drawn from Noller, not from Timeswitch. Noller, not Timeswitch, prepares Noller's sales plans and budgets.

Seetharaman Decl. at ¶ 3.

There is no evidence at all that Noller is the "alter ego" of Timeswitch, or that Timeswitch manipulated Noller to the detriment of its creditors.[8] Therefore, Noller's contacts with California cannot be imputed to Timeswitch for purposes of personal jurisdiction.

*Specific Jurisdiction*

Graval also asserts that personal jurisdiction over Timeswitch is proper under the theory of specific jurisdiction. Graval uses the contacts of the so-called "Bakrie Group" to contend that the cause of action arose out of defendants' contacts with California. Plaintiff's argument is without merit.

For specific jurisdiction, Graval must establish that the defendant Timeswitch did some act by which they purposefully availed itself of the privilege of conducting activities in California, thereby invoking the benefits and protections of its laws; that the claim arose out of Timeswitch's forum related activities; and that the exercise of jurisdiction must be reasonable. *Shute,* 897 F.2d at 381; *Haisten,* 784 F.2d at 1397.

 Even if Timeswitch's ownership of a minority interest in Noller could be seen as somehow "purposefully availing" itself of the benefits and protections of California law, jurisdiction is still not proper.[9]

8. In fact, Noller is not even involved with this litigation.

9. Timeswitch did receive a fax from Graval listing a number of entities that finance Chinese joint ventures, however, "use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state." *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica,* 614 F.2d 1247, 1254 (9th Cir.1980). Moreover, plaintiff sent this fax to Timeswitch; the "unilateral activity of another party ... is not an appropriate consideration when determining whether a defendant has suffi-

Under the second prong of this test, Graval must prove that the claim against Timeswitch arose out of Timeswitch's activities in California. Graval must show that "but for" Timeswitch's contacts with California, the cause of action would not have arisen. *Terracom v. Valley National Bank,* 49 F.3d 555, 561 (9th Cir.1995). There is no allegation or evidence that Noller has anything to do with this litigation.

Graval cannot satisfy the Ninth Circuit test for specific jurisdiction. Thus, specific jurisdiction over Timeswitch is impermissible.[10]

*Summary*

Jurisdiction over defendant Timeswitch is constitutionally impermissible because Timeswitch does not have the requisite contacts with California to comport with Due Process. Accordingly, defendant Timeswitch's Motion to Dismiss for Lack of Personal Jurisdiction should be **GRANTED.**

### III. CONCLUSION

Defendants B & B, Nusantara, & Investindo's Motion to Dismiss for Insufficiency of Process is **GRANTED** without prejudice. Defendant Timeswitch's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED.**

**IT IS SO ORDERED.**

---

cient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros,* 466 U.S. 408, 417, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984).

**10.** Because Graval cannot satisfy the second prong of this test, it is not necessary to determine whether jurisdiction over Timeswitch would be reasonable.