**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-5692-17T4
                  A-0246-18T4

ANTON SHIFCHIK, ZHANNA
SHIFCHIK, and SLAVA SHIFCHIK,

      Plaintiffs-Appellants,

v.

WYNDHAM WORLDWIDE
CORPORATION, its agents, servants
and/or employees, WYNDHAM WORLDWIDE
OPERATIONS, INC., its agents, servants
and/or employees, WYNDHAM HOTEL
GROUP, LLC, its agents, servants and/or
employees, WYNDHAM HOTEL AND
RESORTS, LLC, its agents, servants and/or
employees, WYNDHAM VACATION
RESORTS, INC., its agents, servants and/or
employees, WYNDHAM VACATION
OWNERSHIP, INC., its agents, servants
and/or employees, EAST PASS INVESTORS,
LLC, d/b/a THE EMERALD GRANDE
and/or HARBORWALK HOLDING, LLC,
and/or EMERALD GRANDE LLC, and
its agents, servants and/or employees,

      Defendants-Respondents.

_____

ANTON SHIFCHIK, ZHANNA
SHIFCHIK, and SLAVA SHIFCHIK,

     Plaintiffs-Respondents,

v.

WYNDHAM WORLDWIDE
CORPORATION, its agents, servants
and/or employees, WYNDHAM WORLDWIDE
OPERATIONS, INC., its agents, servants
and/or employees, WYNDHAM HOTEL
GROUP, LLC, its agents, servants and/or
employees, WYNDHAM HOTEL AND
RESORTS, LLC, its agents, servants and/or
employees, WYNDHAM VACATION RESORTS,
INC., its agents, servants and/or employees,
and WYNDHAM VACATION OWNERSHIP,
INC., its agents, servants and/or employees,

     Defendants,

and

EAST PASS INVESTORS, LLC,
d/b/a THE EMERALD GRANDE
and/or HARBORWALK HOLDING,
LLC, and/or EMERALD GRANDE LLC,
and its agents, servants and/or employees,

     Defendants-Appellants.
_____

2

A-5692-17T4

Argued February 11, 2020 – Decided April 14, 2020

Before Judges Fisher, Gilson and Rose

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-9314-14.

Kevin H. Marino argued the cause for appellants in A-5692-17 and respondents in A-0246-18 (Marino Tortorella & Boyle, PC, and Law Offices of Rosemarie Arnold, attorneys; Rosemarie Elizabeth Arnold and Maria R. Luppino, on the briefs).

Edward J. De Pascale argued the cause for respondents Wyndham Worldwide Corporation, Wyndham Worldwide Operations, Inc., Wyndham Hotel Group, LLC; Wyndham Hotel and Resorts, LLC, Wyndham Vacation Resorts, Inc., and Wyndham Vacation Ownership, Inc. in A-5692-17 (Mc Elroy Deutsch Mulvaney & Carpenter, LLP, and Greenbaum Rowe Smith & Davis, LLP, attorneys; Edward J. De Pascale and Clifford Brian Kornbrek, on the brief).

Tamar B. Kelber (Gass Weber Mullins LLC) of the Wisconsin bar, admitted pro hac vice, argued the cause for respondents East Pass Investors, LLC, Emerald Grande, LLC, and Harborwalk Holding, LLC in A-5692-17 and appellants in A-0246-18 (Porzio Bromberg & Newman PC, Eliyahu S. Scheiman, J. Ric Gass (Gass Weber Mullins LLC) of the Wisconsin bar, admitted pro hac vice, Tamar B. Kelber, Stephen T. Trigg (Gass Weber Mullins LLC) of the Wisconsin bar, admitted pro hac vice, attorneys; Eliyahu S. Scheiman, on the briefs).

PER CURIAM

A-5692-17T4

Plaintiff Anton Shifchik, a New Jersey resident, was injured at a Florida resort. He filed his personal injury action in New Jersey, suing companies that developed and managed the Florida resort. All those companies were incorporated and have their principal places of business in Florida. Plaintiff also sued a corporation that had a sales and marketing agreement with the Florida resort. That corporation was incorporated in Delaware and principally operated in Florida. Finally, plaintiff sued the parent and affiliated companies of the corporation that had the sales and marketing agreement; the ultimate parent corporation had its principal place of business in New Jersey.

Plaintiff appeals from an order granting summary judgment in favor of the Florida companies that developed and managed the Florida resort. He also appeals from an order dismissing his claims against the corporation with the sales and marketing agreement and its corporate parents and affiliates. In addition, plaintiff appeals from several orders that limited the scope of discovery.

The trial court ruled that the Florida companies and the corporation with the sales and marketing agreement were not subject to personal jurisdiction in New Jersey. The court also ruled that the parent and affiliated companies of the corporation with the sales and marketing agreement were not responsible for the

A-5692-17T4

alleged actions of their affiliated company and therefore could not be liable for plaintiff's injuries. We agree and affirm.

The Florida companies filed a separate appeal, challenging the trial court's order denying their request for frivolous-litigation sanctions against plaintiff and his counsel. We consolidate both appeals for purposes of this opinion, and we also affirm the order denying sanctions.

I.

We derive the facts from the record developed on the motions for summary judgment and dismissal. We view those facts in the light most favorable to plaintiff, the non-moving party. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016) (citing Brill v. Guardian Life Ins. Co of Am., 142 N.J. 520, 541-42 (1995)).

In the early morning hours of October 19, 2013, plaintiff was injured when he dove headfirst into a pool at the Emerald Grande Hotel, located in Destin, Florida (the Resort). At the time of the accident, plaintiff was an adult, lived in New Jersey, and was in Florida to attend a wedding. Plaintiff was not staying at the Resort. Instead plaintiff had been invited to the Resort by friends who were staying there and who were also attending the wedding. As a result of his

accident, plaintiff was severely injured and significant parts of his body have been paralyzed.

Approximately one year after the accident, on October 3, 2014, plaintiff filed a personal injury action in New Jersey. Plaintiff sued three groups of defendants. First, he sued three Florida companies that developed and managed the Resort. Those defendants are Emerald Grande, LLC (Emerald), East Pass Investors, LLC (East Pass), and Harborwalk Holding, LLC (collectively the Emerald Grande Defendants). Second, plaintiff sued Wyndham Vacation Resorts (Wyndham Vacation), which has a sales and marketing agreement with the Resort. Under that agreement, Wyndham Vacation marketed some of the rooms and suites at the Resort and it also owned portions of some of the rooms and suites. Finally, plaintiff sued the parent and affiliated corporations of Wyndham Vacation, including Wyndham Vacation Ownership, Inc. (Wyndham Ownership), Wyndham Hotel and Resorts, LLC (Wyndham Hotel), Wyndham Hotel Group, LLC (Wyndham Group), Wyndham Worldwide Operations, Inc (Wyndham Operations), and Wyndham Worldwide Corporation (Wyndham

Worldwide). The Wyndham entities will sometimes be referred to collectively as the Wyndham Defendants.[1]

In his complaint, plaintiff alleged that his injuries were caused by defendants' negligent operation, maintenance, and design of the Resort's pool. Specifically, plaintiff contended that the defendants breached duties owed to him by failing to properly design the pool, failing to properly maintain signage and lighting at the pool, failing to supervise, guard, and inspect the pool, failing to warn and give notice of the danger of using the pool, and failing to maintain the pool in a safe condition. Plaintiff sought compensatory and punitive damages for the severe and permanent injuries he suffered. Plaintiff's parents also asserted claims, seeking damages for the costs they had incurred and will incur in caring for plaintiff's medical needs.[2]

On November 20, 2014, the Emerald Grande Defendants filed an answer, in which they asserted that they "are Florida entities and are not subject to the

_____

[1] In their brief, the Wyndham Defendants point out that on May 31, 2018, Wyndham Hotels was spun-off from Wyndham Worldwide and became a separate, publicly traded corporation. Wyndham Worldwide also changed its name to Wyndham Destinations, Inc. Nonetheless, the Wyndham Defendants acknowledged that for purposes of this appeal, Wyndham Worldwide "is the relevant direct or indirect parent corporation of all Wyndham Defendants."

[2] Although the parents are named as plaintiffs in the complaint, we refer to plaintiff because he is an adult and is the individual who suffered the injuries.

A-5692-17T4

personal jurisdiction of a New Jersey court." One month later, those defendants moved to dismiss the complaint for lack of personal jurisdiction. Shortly thereafter, the trial court denied that motion without prejudice and directed the parties to engage in discovery.

On May 11, 2015, the Wyndham Defendants filed a motion to dismiss plaintiff's complaint as to all Wyndham Defendants, except Wyndham Vacation, arguing that the other Wyndham Defendants had no connection to the Resort or plaintiff's accident. The court denied that motion, and thereafter the Wyndham Defendants filed their answer, asserting that the New Jersey court "lack[ed] personal jurisdiction over" them.

The parties then engaged in discovery, including discovery focused on whether defendants were subject to personal jurisdiction in New Jersey. That discovery established that the Emerald Grande Defendants are all limited liability companies established in Florida. In 2007, Emerald developed the Resort, which consists of 290 suites that are individually owned. East Pass manages and operates the Resort, and Harborwalk Holding is the parent company of Emerald and East Pass. None of the Emerald Grande Defendants had ever been organized in or registered to do business in New Jersey. Instead,

8

all the operations and facilities of the Emerald Grande Defendants are located in Florida, and all of their employees work in Florida.

Wyndham Vacation is in the business of developing, marketing, and financing the sale of vacation ownership interests to individual consumers. Wyndham Vacation is a Delaware corporation with its principal operations based in Florida. Wyndham Vacation is registered to do business in New Jersey, and it has at least twenty-three employees who work in New Jersey. Wyndham Vacation also owns and manages the Wyndham Skyline Resort in Atlantic City.

Effective January 2011, Wyndham Vacation and Emerald entered into a sales and marketing agreement (the Agreement), which granted Wyndham Vacation the exclusive right to market the Resort's timeshare units. Under the Agreement, ownership shares in certain condominium units at the Resort were conveyed to a trust for the benefit of an association of owners of timeshares. Wyndham Vacation agreed to sell and market those ownership shares through the Club Wyndham Access plan, which was developed and managed by Wyndham Vacation. Wyndham Vacation owns approximately forty-one percent of the Resort's timeshare units, eight three-bedroom condominiums at the Resort, and has an easement to use the Resort's common areas, including the pool.

The Agreement further provided that individual vacation ownership interests could be exchanged through Club Wyndham Plus, which is an exchange program managed by Wyndham Vacation. In a separate affiliation agreement, Emerald, Wyndham Vacation, and the homeowner's associations of the Resort agreed that the Resort would become affiliated with Club Wyndham Plus to allow for the exchange of individual vacation ownership interests. Under that arrangement owners of suites at the Resort can timeshare their suites through Wyndham Vacation.

The Agreement states that it is not a partnership agreement. Moreover, both the Agreement and the affiliation agreement provide that all notices should be given in Florida, that Florida law applies to the agreements, and that disputes should be brought in a Florida court.

Wyndham Vacation is owned by Wyndham Ownership, which in turn is owned by Wyndham Worldwide. Wyndham Ownership is a Delaware corporation, with its principal operations in Florida. Wyndham Worldwide, the ultimate parent company of all Wyndham entities, is a publicly traded corporation with its principal place of business in New Jersey. The other Wyndham Defendants were all affiliated companies of Wyndham Vacation.

A-5692-17T4

Discovery closed in February 2018, however, not all the scheduled depositions were completed by that time. On March 1, 2018, the Emerald Grande Defendants filed a motion for summary judgment. On April 19, 2018, the Wyndham Defendants filed a "cross-motion" seeking dismissal of plaintiff's complaint under Rule 4:6-2(b) and (e).

One week later, the trial court heard oral argument on all those motions. Two months later, on June 28, 2018, the court issued two orders accompanied by written decisions. In one order, the court granted summary judgment and dismissed the claim against the Emerald Grande Defendants without prejudice. In the other order, the court granted the motion to dismiss plaintiff's complaint as to the Wyndham Defendants. Specifically, the trial court found that the Emerald Grande Defendants, Wyndham Vacation, and Wyndham Ownership were not subject to personal jurisdiction in New Jersey. The court also found that the other Wyndham Defendants had no direct relationship with the Resort and therefore could not be responsible for plaintiff's injuries. In making that latter ruling, the trial court effectively rejected plaintiff's arguments that Wyndham Worldwide and its affiliated companies were alter egos of or otherwise responsible for the actions of Wyndham Vacation and Wyndham Ownership.

After oral argument, but before the trial court issued its decisions, the Emerald Grande Defendants filed a motion for frivolous litigation sanctions against plaintiff and his counsel. The trial court denied that motion in an order dated August 31, 2018.

Meanwhile, on August 10, 2018, plaintiff filed his appeal. Specifically, plaintiff appeals from nine orders: the two June 28, 2018 orders, which dismissed the claims against all defendants, and six orders that limited the scope of discovery and which were dated May 25, 2018; April 13, 2018; March 6, 2018; February 2, 2018; December 15, 2017; and October 4, 2017.[3]

Thereafter, in November 2018, plaintiff filed suit in Florida against the Emerald Grande Defendants, Wyndham Vacation, and Wyndham Ownership. At oral argument, counsel for the parties informed us that the suit in Florida had been dismissed based on Florida's four-year statute of limitations for personal injury actions. See Fla. Stat. § 95.11(3) (2018).[4]

---

[3] Plaintiff also listed a September 7, 2017 order in his notice of appeal; that order denied his request to file a third amended complaint. Plaintiff, however, did not brief any issues regarding the denial of the motion to amend the complaint. Accordingly, we deem that issue to be waived. Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (citations omitted).

[4] Plaintiff argues that we should find personal jurisdiction over defendants because he would have no recourse otherwise. The procedural history

## II.

We first address plaintiff's appeal. The central issue raised in that appeal is whether defendants are subject to personal jurisdiction in New Jersey. Specifically, plaintiff argues (1) the Wyndham Defendants waived their personal jurisdiction defense; (2) all defendants are subject to personal jurisdiction in New Jersey; (3) Wyndham Worldwide and Wyndham Operations are responsible for plaintiff's injuries; and (4) plaintiff was denied access to material discovery. We are not persuaded by any of these arguments and address each argument in turn.

### A.    Waiver

Plaintiff contends that the Wyndham Defendants waited too long to file their motion to dismiss his claims based on a lack of personal jurisdiction. Accordingly, plaintiff argues that the Wyndham defendants waived that affirmative defense.

Plaintiff, however, did not raise the waiver issue before the trial court. Consequently, we decline to address that issue on this appeal. R. 2:10-2; State v. Robinson, 200 N.J. 1, 20 (2009) ("[C]ourts will decline to consider questions

---

establishes that plaintiff was on notice of defendants' jurisdictional defenses and could have filed an action in Florida before the Florida statute of limitations elapsed.

A-5692-17T4

or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest."); Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973).

Although plaintiff seeks to raise the issue of waiver in connection with personal jurisdiction, that issue is not the type of jurisdictional question we will address for the first time on appeal. See ibid.; Byrnes v. Landrau, 326 N.J. Super. 187, 193 (App. Div. 1999) (holding that personal jurisdiction is a waivable defense). Here, the trial court had jurisdiction to decide the personal jurisdiction issues and plaintiff could have raised, but failed to raise, the waiver argument before the trial court.

Moreover, even if we were to consider the waiver argument, that argument lacks merit. Rule 4:6-2(b) requires the defense of lack of personal jurisdiction to be asserted in a defendant's answer. Rule 4:6-3 then requires that a motion to dismiss based on the lack of personal jurisdiction "shall be raised by motion within [ninety] days after service of the answer . . . ." Rule 4:6-7 goes on to state that the defense of personal jurisdiction is "waived if not raised by motion pursuant to [Rule] 4:6-3 . . . ." Nevertheless, all those rules are subject to Rule 1:1-2, which states that the trial court can relax or dispense with any rule "if

adherence to it would result in an injustice."  See also R. 1:3-4(a) (allowing a court to enlarge the time for taking an action).

Before filing their answer, the Wyndham Defendants moved to dismiss plaintiff's claims.  At the time they filed their motion, the Emerald Grande Defendants had already moved to dismiss plaintiff's claims on personal jurisdiction grounds, but that motion had been denied and the parties were directed to engage in discovery, including jurisdictional discovery.  The Wyndham Defendants' initial motion to dismiss was also denied without prejudice.  Thereafter, the Wyndham Defendants filed an answer and asserted the affirmative defense of lack of personal jurisdiction.  Consequently, the issue of personal jurisdiction was identified in the initial stages of the litigation and thereafter that defense was not waived by any defendant.

B.    Personal Jurisdiction

The question of personal jurisdiction involves a mixed question of law and fact.  Rippon v. Smigel, 449 N.J. Super. 344, 359 (App. Div. 2017) (citing Citibank, N.A. v. Estate of Simpson, 290 N.J. Super. 519, 532 (App. Div. 1996)).  We will not disturb a trial court's factual findings concerning jurisdiction if they are supported by substantial credible evidence.  Id. at 358.  We review de novo the legal aspects of personal jurisdiction.  Ibid. (citing Mastondrea v. Occidental

Hotels Mgmt. S.A., 391 N.J. Super. 261, 268 (App. Div. 2007)). Moreover, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference [on appeal]." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995); see also State v. Hubbard, 222 N.J. 249, 263 (2015) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

New Jersey courts "may exercise in personam jurisdiction over a non-resident defendant 'consistent with due process of law.'" Bayway Refining Co. v. State Utils., Inc., 333 N.J. Super. 420, 428 (App. Div. 2000) (alterations in original omitted) (quoting R. 4:4-4(b)(1)). Our courts exercise jurisdiction over nonresident defendants "to the uttermost limits permitted by the United States Constitution." Avdel Corp. v. Mecure, 58 N.J. 264, 268 (1971); Jardim v. Overley, 461 N.J. Super. 367, 377 (App. Div. 2019).

A two-part test governs the analysis of personal jurisdiction: (1) defendant must have "certain minimum contacts" with the forum state, and (2) maintaining the suit in that state cannot offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "[T]he requisite quality and

quantum of contacts is dependent on whether general or specific jurisdiction is asserted . . . ." Citibank, N.A., 290 N.J. Super. at 526.

General jurisdiction exists when the plaintiff's claims arise out of the defendant's "continuous and systematic" contacts with the forum state. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 416 (1984); Baanyan Software Servs., Inc. v. Kuncha, 433 N.J. Super. 466, 474 (App. Div. 2013). For general jurisdiction to attach, a defendant's activities must be "so continuous and systematic as to render [it] essentially at home in the forum State." FDASmart, Inc. v. Dishman Pharm. & Chems., Ltd., 448 N.J. Super. 195, 202 (App. Div. 2016) (alteration in original) (citation omitted) (quoting Daimler AG v. Bauman, 571 U.S. 117, 127 (2014)).

Specific jurisdiction is available when the "cause of action arises directly out of defendant's contacts with the forum state . . . ." Waste Mgmt., Inc. v. Admiral Ins. Co., 138 N.J. 106, 119 (1994), cert. denied, 513 U.S. 1183 (1995). In examining specific jurisdiction, the "minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" Lebel v. Everglades Marina, Inc., 115 N.J. 317, 323 (1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). The minimum contacts requirement is satisfied if "the contacts resulted from the defendant's purposeful conduct and not the

unilateral activities of the plaintiff." Ibid. (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)). "In determining whether the defendant's contacts are purposeful, a court must examine the defendant's 'conduct and connection' with the forum state and determine whether the defendant should 'reasonably anticipate being haled into court [in the forum state].'" Bayway Refining Co., 333 N.J. Super. at 429 (alteration in original) (quoting World-Wide Volkswagen Corp., 444 U.S. at 297).

We apply the well-established standards for personal jurisdiction to the three different types of defendants sued by plaintiff: (1) the Emerald Grande Defendants; (2) Wyndham Vacation; and (3) the other Wyndham Defendants. We distinguish Wyndham Vacation from the other Wyndham entities because only Wyndham Vacation had agreements with, and any direct relation to, the Resort.

1. The Emerald Grande Defendants

As already summarized, the Emerald Grande Defendants are all Florida companies with their principal place of business in Florida. Those defendants developed and managed the Resort, which is located in Florida. The Emerald Grande Defendants are not registered to do business in New Jersey and have no

18

employees or physical facilities in New Jersey. Consequently, the Emerald Grande Defendants are not subject to general jurisdiction in New Jersey.

Furthermore, those defendants are not subject to specific jurisdiction in New Jersey for plaintiff's injuries. Plaintiff was injured at the Resort in Florida. There is no evidence that the Emerald Grande Defendants had any contact with plaintiff or solicited him to come to the Resort. Indeed, in discovery plaintiff acknowledged that he was not staying at the Resort and had no contact with the Resort before visiting as a guest of other people attending the wedding.

2.    Wyndham Vacation

Wyndham Vacation is a Delaware corporation with its principal operations in Florida. It operates worldwide in developing and marketing vacation ownership interests to individual consumers. It has relationships with over 200 resorts and over 800,000 owners of vacation ownership interests. Accordingly, Wyndham Vacation is registered to and does business in New Jersey. Moreover, it has over twenty employees in New Jersey.

Those connections to New Jersey, however, do not establish general jurisdiction over Wyndham Vacation in New Jersey. Wyndham Vacation does not have the type of "continuous and systematic" contact with New Jersey that would make it "at home" in New Jersey. The resorts that Wyndham Vacations

19

owns or deals with are located in numerous states and foreign countries. Nevertheless, Wyndham Vacation is not at home in all those multiple jurisdictions. Instead, it is principally a Delaware corporation doing business in Florida. See BNSF Railway Co. v. Tyrell, __ U.S. __, 137 S. Ct. 1549, 1559 (2017); Dutch Run-Mays Draft, LLC v. Wolf Block, LLP, 450 N.J. Super. 590, 608 (App. Div. 2017) (holding that registration to do business in New Jersey does not constitute consent to submit to the general jurisdiction of courts in this state).

Wyndham Vacation also is not subject to specific jurisdiction in New Jersey in relationship to plaintiff's accident. Its connections to New Jersey are entirely unrelated to plaintiff's accident. Plaintiff did not book a room at the Resort through Wyndham Vacation. Indeed, as already pointed out, plaintiff did not have a room at the Resort. Furthermore, there is no evidence that plaintiff went to the Resort because of any action or solicitation by Wyndham Vacation.

The undisputed facts established in discovery are that plaintiff visited the Resort as a guest of other people who were staying at the Resort. At approximately 2 a.m., plaintiff decided to dive into the pool. He unfortunately suffered a debilitating injury when he struck his head on the bottom of the pool.

A-5692-17T4

Wyndham Vacation, however, did not bring plaintiff to the resort or cause him to dive into the pool.

### 3. The Other Wyndham Defendants

We need not address whether the other Wyndham Defendants are subject to personal jurisdiction in New Jersey. Instead, we will analyze their lack of responsibility under a duty analysis in subsection C of this opinion. We recognize that the trial court dismissed the claims against Wyndham Ownership on the basis of a lack of personal jurisdiction in New Jersey. We agree with that ruling. The record also establishes, moreover, that Wyndham Ownership had no direct agreement, contract, or relationship with the Resort. Thus, like the other Wyndham entities, it is a distinct corporate entity from Wyndham Vacation.

### C. The Other Wyndham Defendants Had No Duty to Plaintiff

All of plaintiff's claims are based on theories of negligence. A plaintiff bears the burden of proving negligence, which is never presumed. Khan v. Singh, 200 N.J. 82, 91 (2009). To establish a claim of negligence, plaintiff must prove that: (1) defendants owed him a duty of care; (2) defendants breached that duty; (3) the breach was a proximate cause of his injury; and (4) plaintiff sustained actual damages. Townsend v. Pierre, 221 N.J. 36, 51 (2015) (citing

Polzo v. Cty. of Essex, 196 N.J. 569, 584 (2008)). In that regard, businesses owe invitees "a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003) (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 433 (1993)). That duty "requires a business owner to discover and eliminate dangerous conditions" as well as "maintain the premises in safe condition." Ibid. (citing O'Shea v. K. Mart Corp., 304 N.J. Super. 489, 492-93 (App. Div. 1997)).

The material facts established that none of the other Wyndham Defendants had agreements or relationships with the Resort. None of those defendants owned, operated, or had any control over the operations or management of the Resort, or its pool. Consequently, there is no basis for imposing a legal duty on any of the other Wyndham Defendants for injuries plaintiff sustained when he dove into the pool at the Resort. Accordingly, we affirm the trial court's order dismissing the claims against the Wyndham Defendants.

1. Plaintiff's Contentions Regarding the Responsibility of the Wyndham Defendants

Plaintiff argues that the relationship among the Wyndham Defendants is such that they essentially should be treated as closely related entities and should

be subject to general or specific jurisdiction because Wyndham Worldwide has its principal place of business in New Jersey. We reject this argument.

In essence, plaintiff argues for an alter ego theory of jurisdiction that would effectively pierce the corporate veils of the various Wyndham companies. "We have held that the 'forum contacts of a subsidiary corporation will not be imputed to a parent corporation for jurisdictional purposes without a showing of something more than mere ownership.'" FDASmart, 448 N.J. Super. at 203 (quoting Pfundstein v. Omnicom Grp. Inc, 285 N.J. Super. 245, 252 (App. Div. 1995)). To pierce the corporate veil of a parent corporation a party must establish two elements: (1) the subsidiary was dominated by the parent corporation, and (2) adherence to the fiction of a separate corporate existence would perpetrate a fraud or injustice, or otherwise circumvent the law. Id. at 204 (citing State Dept. of Envtl. Prot. v. Ventron Corp., 94 N.J. 473, 500-01 (1983)).

Here, the record contains no evidence that supports piercing the corporate veils among the Wyndham Defendants or otherwise imposing some form of alter ego responsibility among the separate Wyndham Defendants. Plaintiff places particular reliance on two Wyndham trusts, Club Wyndham Access (CWA) and Club Wyndham Plus (CWP). Plaintiff then argues that through those trusts

Wyndham Vacation and the other Wyndham Defendants exercised significant control over the Resort. At best, the trusts supported Wyndham Vacation's efforts to market rooms at the Resort. Their activities did not create specific jurisdiction over Wyndham Vacation. Moreover, the activities of CWA or CWP did not create a basis for imposing alter ego responsibility on the other Wyndham Defendants. In that regard, plaintiff made no showing that there was anything illegal or fraudulent in the corporate structure of the Wyndham Defendants or the operations of CWA and CWP.[5]

We also reject plaintiff's arguments that because the Wyndham Defendants use related websites, we should not treat them as separate corporations. Integrated websites, and even communications via the internet in New Jersey, do not by themselves establish sufficient contacts to subject a defendant to personal jurisdiction in New Jersey. See Jardim, 461 N.J. Super. at 381. The Wyndham Defendants' websites are insufficient contacts for creating either general or specific jurisdiction.

---

[5] The parties dispute whether CWA and CWP are New Jersey based trusts. We do not deem that issue to be material to the question of personal jurisdiction.

A-5692-17T4

D. Discovery

Finally, plaintiff argues that the trial court erred by not permitting him to take certain additional discovery. Specifically, he contends that he should have been permitted to take three additional depositions: the Chief Executive Officer (CEO) of Wyndham Vacation, the CEO of Wyndham Worldwide, and the officer who signed the sale and affiliation agreement between Wyndham Vacation and the Resort. He also asserts that the Emerald Grande Defendants should have been compelled to produce additional documents and materials, including a PowerPoint webinar on how to respond to reviews on TripAdvisor.

We review discovery orders for abuses of discretion. See Estate of Lagano v. Bergen Cty. Prosecutor's Office, 454 N.J. Super. 59, 80 (App. Div. 2018). Here, we discern no abuse. The record establishes that plaintiff was permitted to take discovery and that discovery was open for several years. During that time, plaintiff engaged in significant discovery including taking multiple depositions and receiving responses to comprehensive document demands, interrogatories, and requests for admissions. The discovery that plaintiff now seeks is discovery that he sought just before or after the close of discovery.

Plaintiff argues that the additional discovery he sought may have provided relevant information on the question of personal jurisdiction. Plaintiff, however,

has not identified the factual basis to suggest that additional discovery would have been relevant to personal jurisdiction. The material facts concerning the places of incorporation and the business operations of all the defendants were established in discovery. None of that discovery gave rise to a legitimate argument that the Wyndham Defendants operated as one economic entity and should be treated as one entity for purposes of personal jurisdiction. Consequently, we discern no basis to reverse any of the discovery orders plaintiff challenges on this appeal.

To the extent not addressed, plaintiff's other arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

### III.

In their separate appeal, the Emerald Grande Defendant's challenge the order denying their motion for sanctions under N.J.S.A. 2A:15-59.1 and Rule 1:4-8. We review a trial court's decision on an application for fees or sanctions under an abuse of discretion standard. United Hearts v. Zahabian, 407 N.J. Super. 379, 390 (App. Div. 2009) (citing Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005)).

N.J.S.A. 2A:15-59.1 provides that a prevailing party in a civil action may be awarded reasonable costs and attorney's fees if the court finds that the

complaint or defense of the non-prevailing party was frivolous. To be considered frivolous, the filing must be found to have been made in "bad faith, solely for the purpose of harassment, delay or malicious injury," or made "without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J.S.A. 2A:15-59.1(b).

Rule 1:4-8(b) provides that a party may make a motion for sanctions against an attorney or pro se party that has filed a paper with a court for a frivolous purpose. The rule goes on to provide certain procedures that must be followed to qualify. The rule also imposes limitations on the amount that can be imposed as a sanction. R. 1:4-8(b), (d). The conduct warranting sanctions under Rule 1:4-8 or fees under N.J.S.A. 2A:15-59.1 has been strictly construed and narrowly applied. McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 561 (1993); Tagayun v. AmeriChoice of N.J., Inc., 446 N.J. Super. 570, 578-81 (App. Div. 2016) (holding that movants bear the burden of proving bad faith and that honest attempts to pursue "marginal" claims do not warrant sanctions); Wyche v. Unsatisfied Claims & Judgment Fund of N.J., 383 N.J. Super. 554, 560 (App. Div. 2006).

Here, we discern no abuse of discretion. In that regard, the trial court found that the Emerald Grande Defendants did not meet their burden to demonstrate that plaintiff continued to litigate in bad faith after jurisdictional discovery clarified the relationship among the Emerald Grande and Wyndham Defendants. See Tagayun, 446 N.J. Super. at 579-80. Although plaintiff's allegations were arguably "of marginal merit," id. at 580 (quoting Iannone v. McHale, 245 N.J. Super. 17, 28 (1990)), they were not entirely "without any reasonable basis in law or equity." N.J.S.A. 2A:15-59.1(b). A review of the trial court's findings does not establish that it erred in evaluating the merits of plaintiff's claims. See United Hearts, 407 N.J. Super. at 390. Consequently, we affirm the trial court's denial of the request for sanctions.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5692-17T4